In the Matter of NORMAN GOLD-GREENBERGER, Respondent, v HUMAN RESOURCES ADMINISTRATION OF THE CITY OF NEW YORK, Appellant, et al., Defendants.

Second Department, March 2, 1990

### APPEARANCES OF COUNSEL

*Victor A. Kovner,* Corporation Counsel (*Elizabeth Dvorkin* and *Jean Brandon* of counsel), for appellant.

*Arthur N. Eisenberg* for respondent.

### OPINION OF THE COURT

KOOPER, J.

The issue on appeal is whether the appellant, the Human Resources Administration of the City of New York, infringed upon the petitioner's First Amendment rights by declining to permit him to enter a shelter for the homeless in order to solicit signatures in support of his candidacy for a local school board election. We discern no constitutional im-

propriety in the appellant's action and, accordingly, reverse the judgment insofar as appealed from.

## I.

The facts, which are undisputed, disclose that in early 1989, the petitioner sought elective office as a member of Community School Board No. 16 in Brooklyn. In order to further his candidacy, the petitioner requested permission to enter the Sumner Avenue Armory, a temporary shelter for the homeless operated by the appellant. The petitioner sought to register voters and to solicit signatures for his nominating petition in the shelter. His request for admission was denied.

## II.

Thereafter, by service of an order to show cause dated February 15, 1989, the petitioner commenced this proceeding pursuant to CPLR article 78 in the Supreme Court, Kings County, challenging the appellant's action in excluding him from the shelter. The appellant defaulted in answering the petition, but subsequently moved to vacate its default and also to dismiss the proceeding. In his supporting affirmation, counsel noted that the appellant would consent to the petitioner's "request to enter the shelter for the sole purpose of registering the residents to vote, subject to reasonable place, time, and manner restrictions". The appellant declined, however, to consent to the petitioner's request that he also be permitted to solicit signatures for his nominating petition. In a memorandum submitted in further support of the motion to dismiss, the appellant argued that (1) pertinent regulations governing access of various individuals and organizations to the shelter do not authorize "the entry of political campaigners into the facility", and (2) the shelter is not, in any event, a "public forum or a suitable place for members of the general public to exercise their First Amendment rights to wage a political campaign". In respect to the latter assertion, the appellant further contended that the "petitioner remains free to solicit signatures on the streets outside the shelter", but argued that "he is not free to intrude on the privacy of the residents of the shelter, absent their individual consents".

## III.

By judgment dated February 28, 1989, the Supreme Court granted the petition. The court observed that the regulations

governing access to the facility permit entry to "representatives of organizations or associations providing a service, educational program, or help with problems" and that the appellant "concede[d] its obligation" to permit access to the petitioner for the purpose of registering voters.[1] The court reasoned that there would be no additional disruption to the residents' peace and tranquility if the petitioner were permitted to solicit signatures while present to register voters. The court added, however, that the appellant could permissibly subject the petitioner's access to reasonable regulations designed to prevent unwarranted disruption of the facility. On appeal, the appellant argues, *inter alia,* that since the shelter is not a "public forum" as defined by various decisions of the United States Supreme Court, its action in denying the petitioner access in order to solicit signatures constituted a reasonable restriction imposed in furtherance of a legitimate governmental interest. We agree and reverse.

## IV.

Preliminarily, we must address the issue of mootness. Since the School Board election took place in May of 1989, the instant controversy is moot. Nevertheless, both parties urge the court to entertain the appeal since the First Amendment issue presented is substantial, novel in character and one which will likely recur, yet evade appellate review. We agree. In *Matter of Hearst Corp. v Clyne* (50 NY2d 707, 714-715) the Court of Appeals enunciated the following factors to be considered in determining whether an exception to the mootness doctrine may be found: "(1) a likelihood of repetition, either between the parties or among other members of the public; (2) a phenomenon typically evading review; and (3) a showing of significant or important questions not previously passed on, i.e., substantial and novel issues". The legal issue presented at bar satisfies the foregoing criteria. The question whether the appellant may deny access to an individual who seeks to engage in political speech is, as the appellant argues, likely to recur "given the increasing proliferation of homeless shelters and the attractive concentration of voter population they provide for candidates". Further, the question is likely to evade review because once the election has been held, the

---

1. On appeal, the appellant rejects the suggestion that it in any sense conceded a "legal obligation" to admit the petitioner for the limited purpose of registering voters.

dispute becomes academic. Finally, the legal issue presented is significant and novel, having never been the subject of appellate consideration in New York. In light of the foregoing, the mootness doctrine is not a bar to appellate review *(see, e.g., Matter of Grand Jury Subpoenas for Locals 17, 135, 257, & 608,* 72 NY2d 307, 311, *cert denied* — US —, 109 S Ct 492; *People ex rel. Dawson v Smith,* 69 NY2d 689, 690; *Matter of Westchester Rockland Newspapers v Leggett,* 48 NY2d 430; *Matter of Jones v Berman,* 37 NY2d 42, 57; *People ex rel. Leonard HH. v Nixon,* 148 AD2d 75; *see also, Storer v Brown,* 415 US 724, 737, n 8).

## V.

Turning to the merits of the controversy, a review of the relevant authorities discloses that in approaching First Amendment issues of the type presented at bar, the United States Supreme Court has examined the nature of the activity involved in order to ascertain if it has been recognized as a form of protected speech. If the activity constitutes a form of protected speech, the inquiry then centers upon the nature of the forum in which the speech takes place *(see, e.g., Cornelius v NAACP Legal Defense & Educ. Fund,* 473 US 788; *United States v Grace,* 461 US 171; *Perry Educ. Assn. v Perry Local Educators' Assn.,* 460 US 37; *Greer v Spock,* 424 US 828; *Grayned v City of Rockford,* 408 US 104; *Adderley v Florida,* 385 US 39).

There is no dispute that the petitioner's political activities constitute speech protected by the First Amendment *(see, e.g., Meyer v Grant,* 486 US 414). Our conclusion in this respect, however, merely serves to begin the inquiry. This is because, "[e]ven protected speech is not equally permissible in all places and at all times" *(see, Cornelius v NAACP Legal Defense & Educ. Fund, supra,* at 799). As the Supreme Court has observed, "[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities" *(see, Cornelius v NAACP Legal Defense & Educ. Fund, supra,* at 799-800). In order to gauge the extent to which governmental restrictions may be applied to protected speech, "the Court has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property

to its intended purpose outweighs the interest of those wishing to use the property for other purposes" *(see, Cornelius v NAACP Legal Defense & Educ. Fund, supra,* at 800; *Frisby v Schultz,* 487 US 474; *United States Postal Serv. v Greenburgh Civic Assns.,* 453 US 114, 129-131; *Adderley v Florida, supra).* Specifically, the court has "identified three types of fora: 'the traditional public forum, the public forum created by government designation, and the nonpublic forum' " *(Frisby v Schultz, supra,* 487 US, at 479-480, quoting from *Cornelius v NAACP Legal Defense & Educ. Fund, supra,* at 802; *see also, Perry Educ. Assn. v Perry Local Educators' Assn., supra).*

In *Cornelius v NAACP Legal Defense & Educ. Fund (supra,* at 802), the Supreme Court explained that "[t]raditional public fora are those places which 'by long tradition or by government fiat have been devoted to assembly and debate' " (quoting from *Perry Educ. Assn. v Perry Local Educators' Assn., supra,* at 45). Parks and streets had been identified by the Supreme Court as "quintessential" public fora *(Perry Educ. Assn. v Perry Local Educators' Assn., supra,* at 45; *Frisby v Schultz, supra,* 487 US, at 480-481). Moreover, "a public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects" *(Cornelius v NAACP Legal Defense & Educ. Fund, supra,* at 802; *Perry Educ. Assn. v Perry Local Educators' Assn., supra,* at 45-46, n 7). Of course, "[t]he government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse" *(Cornelius v NAACP Legal Defense & Educ. Fund, supra,* at 802; *Perry Educ. Assn. v Perry Local Educators' Assn., supra,* at 45). Nor does the First Amendment "guarantee access to property simply because it is owned or controlled by the government" *(United States Postal Serv. v Greenburgh Civic Assns., supra,* at 129). Indeed, " '[t]he State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated' " *(Greer v Spock, supra,* at 836, quoting from *Adderley v Florida, supra,* at 47; *see also, Frisby v Schultz, supra,* 487 US, at 480).

Where the forum in question is deemed to be nonpublic in nature, the government may impose more restrictive limitations on speech. Indeed, the Supreme Court has stated that

"property owned or controlled by the Government which is *not* a public forum may be subject to a prohibition of speech, leafleting, picketing, or other forms of communication without running afoul of the First Amendment" *(see, United States Postal Serv. v Greenburgh Civic Assns., supra,* at 131, n 7). Control "over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint-neutral" *(see, Cornelius v NAACP Legal Defense & Educ. Fund, supra,* at 806). Such restrictions need not, however, "be the most reasonable or the only reasonable limitation" *(see, Cornelius v NAACP Legal Defense & Educ. Fund, supra,* at 808; *Perry Educ. Assn. v Perry Local Educators' Assn., supra).* Further, there is no requirement that the government's interest be compelling or that the restriction be narrowly tailored where a nonpublic forum is involved. The First Amendment does not "demand unrestricted access to a nonpublic forum merely because use of that forum may be the most efficient means of delivering the speaker's message" *(see, Cornelius v NAACP Legal Defense & Educ. Fund, supra,* at 809; *Perry Educ. Assn. v Perry Local Educators' Assn., supra; United States Postal Serv. v Greenberg Civic Assns., supra,* at 129).

## VI.

█ When considered in light of the foregoing principles, it is our conclusion that the homeless shelter constitutes a "nonpublic forum" and that, when so viewed, the restrictions placed on the petitioner's access to the shelter were not violative of his First Amendment rights. A review of the record buttresses our conclusion in this respect. At bar, the subject location is a government-owned armory, operated by the City of New York as a temporary residence for homeless adults, established in order to provide temporary residential care, room, board and supervision to persons in need of such services *(see,* Social Services Law § 2 [23]; § 461-a [3] [b]; 18 NYCRR 485.2 [a]; 485.14 [a] [1], [2], [3]). Applying the "forum analysis" inquiry utilized by the Supreme Court, it is immediately apparent that a homeless shelter is not a location which, by tradition or historical precedent, is associated with public assembly, communication between citizens and the discussion of public questions *(see, Perry Educ. Assn. v Perry Local Educators' Assn., supra,* at 45). Nor is the shelter a "public

forum" by virtue of "government fiat", i.e., the shelter has not been "opened for use by the public as a place for expressive activity" *(see, Perry Educ. Assn. v Perry Local Educators' Assn., supra,* at 45). Although pursuant to statute and applicable regulations, certain organizations and individuals are permitted access to the shelter *(see,* Social Services Law § 461-a [3] [b]; 18 NYCRR 485.14), the shelter has by no means been opened to the "public-at-large" for expressive activity *(see, Cornelius v NAACP Legal Defense & Educ. Fund, supra,* at 805).

## VII.

The petitioner nevertheless contends that, under the principle of "equal access", he is entitled to enter the shelter, since pursuant to statute and regulation, the appellant must, as he puts it, permit "a broad range of social, expressive and ideological activity within the common areas of shelter". The petitioner argues that the applicable regulations require the appellant to admit "friends * * * relatives, * * * social workers * * * community organizations * * * service agencies [and] representative[s] from nonprofit organizations to enter the shelters to meet with residents about issues of common concern".[2] The petitioner concludes, *inter alia,* that "[t]here is no reason, in logic or law, why the circulation of a candidate's petition should be regarded any differently" since that activity will necessarily involve "interactive ideological expression"

---

2. Social Services Law § 461-a (3) (a), (b), as amended, provides that:

"3. (a) Pursuant to regulations promulgated by the commissioner, no facility shall restrict or prohibit the access to the facility nor interfere with confidential visits with residents by duly designated persons participating in the long term care ombudsman program as provided for in section five hundred forty-five of the executive law.

"(b) In addition, no facility which provides residential care and services for adults shall restrict or prohibit the access to the facility nor interfere with confidential visits with residents by:

"(i) Family members, guardians, friends of an individual resident and legal representatives, legal counsels and case managers;

"(ii) Individuals representing community organizations or service agencies who will provide, free of charge, a service or educational program to residents;

"(iii) An employee or representative of any public or private not-for-profit corporation, community organization or association whose primary purposes for visiting include assisting residents in resolving problems and complaints concerning their care and treatment, and in securing adequate services to meet their needs. The operator shall make available a common area of the facility for such visits".

with the residents of the shelter. We find the foregoing assertions to be unpersuasive.

Contrary to the petitioner's contentions, the selective granting of access to a nonpublic forum does not transform government property into a "public forum" or create a right to "equal access" mandating his admittance *(see, Perry Educ. Assn. v Perry Local Educators' Assn., supra,* 460 US, at 47; *Greer v Spock, supra).* Nor does the granting of limited access require the appellant to open the shelter doors to all expressive activity merely because it is alleged that the activity involved may arguably be of some benefit to the residents of the shelter or that use of the shelter would constitute the most efficient means of conveying the petitioner's message *(see, Greer v Spock, supra; see also, United States Postal Serv. v Greenburgh Civic Assns., supra).* The Supreme Court has held that property owned by the Government which is not a public forum may be subjected to a prohibition of speech without running afoul of the First Amendment, provided that the distinctions drawn are reasonable in light of the purpose served by the forum *(see, United States Postal Serv.v Greenburgh Civic Assns., supra,* 453 US, at 131, n 7; *Cornelius v NAACP Legal Defense & Educ. Fund,* 473 US 788, *supra).* The appellant's decision to deny the petitioner permission to engage in activity principally comprised of political campaigning cannot be described as an unreasonable exercise of governmental authority in light of the purpose served by the shelter.

As generally set forth by the Social Services Law, the shelter is "established and operated for the purpose of providing temporary residential care, room, board, supervision, information and referral, and where required * * * or otherwise deemed necessary by the operator, social rehabilitation services, for adults in need of temporary accommodations, supervision and services" (Social Services Law § 2 [23]; 18 NYCRR 485.2 [a]). A review of relevant statutory authority and regulations discloses that access is limited to those whose presence will further the mission of the facility in providing shelter and care to homeless adults. Accordingly, access is granted to individuals and organizations "whose primary purposes for visiting include assisting residents in resolving problems and complaints concerning their care and treatment, and in securing adequate services to meet their needs" *(see,* Social Services Law § 461-a [3] [b] [iii]; 18 NYCRR 485.14 [a] [3]). Providing access to the foregoing persons will undoubtedly benefit the residents and advance the salutary purpose of the shelter to

provide interim housing and required services to those in need. On the other hand, political activity relating principally to a local school board election does not address a concern of immediate import to the shelter residents or provide a humanitarian service or benefit consistent with those obviously contemplated by the Social Services Law and pertinent regulations *(see, Cornelius v NAACP Legal Defense & Educ. Fund, supra,* at 806; *Lehman v City of Shaker Hgts.,* 418 US 298). Indeed, the individual to whom the most obvious and immediate benefit will accrue by virtue of the petitioner's admittance, is the petitioner himself.[3] The First Amendment does not require that public authorities charged with the task of operating a homeless shelter admit an individual whose principal objective is to conduct a political campaign.

Moreover, it bears noting that the shelter, while it provides temporary accommodations, is also the residence of those adults who are lodged there. The Supreme Court has recently emphasized that " '[t]he State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society' " *(Frisby v Schultz, supra,* 487 US, at 484, quoting from *Carey v Brown,* 447 US 455, 471). The court further noted that there is "simply * * * no right to force speech into the home of an unwilling listener" *(see, Frisby v Schultz, supra,* 487 US, at 485). In reviewing the petitioner's request for admission to a nonpublic forum such as the facility in question, the appellant reasonably considered the privacy interests of the shelter residents and the potential for unwarranted disruption of authorized shelter functions and activities *(cf., Frisby v Schultz, supra; Cornelius v NAACP Legal Defense & Educ. Fund, supra,* at 806; *Greer v Spock, supra;* Social Services Law § 461-a [3] [e]).

## VII.

Accordingly, by limiting access to those whose contributions will advance the function of the shelter and the needs of its

---

**3.** The appellant's accommodation in offering the petitioner access to register voters, neither establishes that it was "legally obligated" to do so nor requires that it permit the petitioner to engage in other activities which it has judged to be inconsistent with, or disruptive of, the facility's objectives. Accordingly, the fact that the petitioner was granted permission to engage in one type of activity does not, as the Supreme Court suggested, require that he be permitted to engage in another merely because he may happen to be on the premises anyway.

residents, the appellant has imposed reasonably drawn restraints in the proper exercise of its authority " 'to preserve the property under its control for the use to which it is lawfully dedicated' " *(see, Greer v Spock, supra,* 424 US, at 836, quoting from *Adderley v Florida,* 385 US 39, 47, *supra).* Of course, the petitioner remains free to campaign on the street outside the shelter and, therefore, possesses a viable alternative means of obtaining signatures from those shelter residents who wish to provide them.

In light of the foregoing, the judgment is reversed insofar as appealed from, on the law, with costs, and that branch of the petition which was to compel the appellant to grant the petitioner access to an adult shelter for the purpose of obtaining signatures for a nominating petition is denied.

MOLLEN, P. J., BROWN and MILLER, JJ., concur.

Ordered that the judgment is reversed insofar as appealed from, on the law, with costs, and that branch of the petition which was to compel the appellant to grant the petitioner access to an adult shelter for the purpose of obtaining signatures for a nominating petition is denied.