*790 OPINION OF THE COURT
John Cataldo, J.
Defendant is charged with one count of unlawful solicitation in the subway, a violation under Rules of the New York City Transit Authority (21 NYCRR) § 1050.6 (b) (2). He seeks dismissal of the accusatory instrument upon the ground that 21 NYCRR 1050.6 (b) (2),[1] which bans all begging in the New York City transit system, is violative of freedom of speech as guaranteed by New York Constitution, article I, § 8.

I. Background

The question of the constitutionality of 21 NYCRR 1050.6 (b) under the United States Constitution was previously the issue of litigation in the Federal courts in Young v New York City Tr. Auth. (729 F Supp 341 [SD NY], revd 903 F2d 146 [2d Cir], cert denied 498 US 984). In Young, a class action suit brought on behalf of the homeless, the plaintiffs sought a *791 preliminary injunction against the enforcement of the transit rule, asserting it infringed on their right to free speech under the First Amendment of the US Constitution.
The District Court, Judge Leonard B. Sand, relying upon the Supreme Court’s Schaumburg trilogy of cases which held that solicitation of funds by charitable organizations was protected speech activity, concluded that begging was likewise constitutionally protected speech (see, Village of Schaumburg v Citizens for Better Envt., 444 US 620; Secretary of State of Md. v Munson Co., 467 US 947; Riley v National Fedn. of Blind, 487 US 781). Furthermore, the District Court found that by virtue of the 1989 revisions to 21 NYCRR 1050.6 Ob) and (c)[2] which allowed some speech activities within the transit system, including solicitation by registered charities, the New York City Transit Authority (hereinafter TA) had created a designated public forum, requiring analysis under the strict scrutiny test of Perry Educ. Assn. v Perry Local Educators’ Assn. (460 US 37). The Perry test requires that content-based restrictions on protected speech in traditional or designated public fora must serve a compelling State interest and be narrowly drawn to achieve that end. The Court concluded that the regulation was not narrowly tailored to serve the governmental interest of protecting the public from harassment and intimidation, in that the rule was not limited to aggressive beggars but totally banned passive beggars as well.
On appeal, a divided Second Circuit panel reversed (Young v New York City Tr. Auth., 903 F2d 146, supra). The Second Circuit declined to follow the analysis of begging as equal to charitable solicitations, finding instead that begging was primarily conduct. In order for conduct to receive First Amendment protection, it must convey a particularized message with a great likelihood of the message being understood by those who view the conduct. In other words, burning a flag might be conduct without any message, or it might have an expressive element, such as an antiwar message. The circumstances surrounding where, when and how the act occurred must be analyzed to determine whether a message was conveyed (see, *792 e.g., Texas v Johnson, 491 US 397; Spence v Washington, 418 US 405; Tinker v Des Moines School Dist., 393 US 503). The Second Circuit reasoned that merely asking for money did not amount to a message likely to be understood by the subway passengers being solicited. In order for a beggar to engage in expressive conduct conveying a particularized message necessary to obtain First Amendment protection, the court posited that the beggar would need to impart to the public a social or political message, rather than merely seeking money for his or her own needs (Young v New York City Tr. Auth., supra, 903 F2d, at 153). The court went on to state that even if begging were expressive conduct, it would only be subject to the test set forth in United States v O’Brien (391 US 367) for symbolic speech, a lesser test than that required for pure speech under Perry (supra). The O’Brien test states that governmental regulations on conduct with expressive elements are sufficiently justified if: (1) it is within the constitutional power of the government to enact the law; (2) it furthers an important or substantial governmental interest; (3) the interest is unrelated to the suppression of free expression, and (4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest (United States v O’Brien, supra, 391 US, at 377). The Second Circuit found the ban on begging met the O’Brien test in that it served an important governmental interest in protecting the public safety. The Second Circuit further reasoned that even under a Perry analysis, the subways were a nonpublic forum or at most a limited public forum, open only to certain groups and specified speech activities, but expressly not intended to be open to begging by individuals. Additionally, the Second Circuit held that jurisdiction did not exist in this particular case to decide the constitutionality of Penal Law § 240.35 (l)’s ban on loitering for the purpose of begging, and vacated a finding of the District Court that it violated due process under the New York Constitution.
Thereafter, the constitutionality of Penal Law § 240.35 (1) was again the subject of litigation in the Federal courts in Loper v New York City Police Dept. (802 F Supp 1029 [SD NY], affd 999 F2d 699 [2d Cir]). Penal Law § 240.35 (1) reads: "A person is guilty of loitering when he * * * [l]oiters, remains or wanders about in a public place for the purpose of begging”. The Second Circuit in Loper, in examining the constitutionality of the statute under the First Amendment, resolved the question left open by Young (supra) as to whether or not *793 begging was entitled to any protection under the Federal Constitution. In accordance with recent Supreme Court cases decided subsequent to its own decision in Young, definitively reaffirming the principles of the Schaumburg trilogy of cases, the Second Circuit concluded that no significant distinction could be made between begging for charity for oneself, and asking for charity for persons other than oneself (see, International Socy. for Krishna Consciousness v Lee, 505 US —, 112 S Ct 2701; United States v Kokinda, 497 US 720). Begging was found to be speech entitled to First Amendment protection, whether or not it was accompanied by any verbal message (Loper v New York City Police Dept., supra, 999 F2d, at 704). Loper determined that the total ban on begging on the streets, a traditional public forum for speech activities, failed First Amendment analysis under both the Perry strict scrutiny test, and the less restrictive test of O’Brien (supra). The stated governmental interests were insufficient to justify a total ban on begging, whether peaceful or aggressive, in all public places. Loper, however, distinguished Young, stating that its conclusion that begging could be banned in the subways remained valid under the special circumstances involved within the close confines of the transit system (Loper v New York City Police Dept., supra, 999 F2d, at 702-703).
In light of this history, the defendant maintains that New York Constitution, article I, § 8 provides greater speech protection than the First Amendment, and that even if Young (supra) remains viable in light of Loper (supra), 21 NYCRR 1050.6 (b) cannot pass constitutional muster under New York’s broader free speech protections. Defendant asserts that People ex rel. Arcara v Cloud Books (68 NY2d 553) is controlling and that under the test of Arcara, the People have failed to demonstrate that the transit rule is no broader than necessary to accomplish a legitimate and important State objective.
The People counter that begging is mere conduct under the law of New York, equating it to conduct that lacks a particularized message, such as the nude sunbathing found not to be expressive activity entitled to any free speech protection in People v Hollman (68 NY2d 202). Even if begging were found to be protected speech, the People assert that the ban on begging within the confines of the subway system, a nonpublic or at most limited forum, meets constitutional standards under both the Federal and New York Constitutions. The People state that even if Arcara (supra) is the applicable standard for analysis of the begging rule under New York *794 law, the ban on begging in the transit system meets the Arcara standard.

II. Is Begging Protected Speech?

Before examining the defendant’s contention that the New York Constitution provides greater protection to begging than Federal law, the court must first examine the current status of the right to beg under the Federal Constitution. In Loper (supra), the Second Circuit found that begging was a form of speech, likening begging to solicitation by charitable organizations (999 F2d, at 704). The Supreme Court itself has repeatedly reaffirmed that the right to solicit funds through face-to-face encounters between solicitor and contributor is protected speech under the First Amendment, whether for religious, charitable or political causes (see, e.g., International Socy. for Krishna Consciousness v Lee, supra, 505 US, at —, 112 S Ct, at 2705; United States v Kokinda, supra, 497 US, at 725; Riley v National Fedn. of Blind, supra, 487 US, at 788; Cornelius v NAACP Legal Defense & Educ. Fund, 473 US 788, 797-798; Secretary of State of Md. v Munson Co., supra, 467 US, at 959-960; Heffron v International Socy. for Krishna Consciousness, 452 US 640, 647; Village of Schaumburg v Citizens for Better Envt., supra, 444 US, at 632). In Schaumburg (supra), the Court reasoned that charitable appeals for the contribution of money were so intertwined with speech that they were entitled to First Amendment protection. Thus, it is uncontested that a charity has a First Amendment right to solicit funds to feed or clothe or otherwise aid those in need. It would be unreasonable to conclude that the Federal Constitution does not provide the same free speech protection to the individual in need as it does to the solicitor for a charity, to stand on the same public street corner and ask for money. No rational distinction can be made between the message involved, whether the person standing on the corner says "Help me, I’m homeless” or "Help the homeless”. This was the exact conclusion reached by the Second Circuit in Loper, which stated: "We see little difference between those who solicit for organized charities and those who solicit for themselves in regard to the message conveyed. The former are communicating the needs of others while the latter are communicating their personal needs. Both solicit the charity of others. The distinction is not a significant one for First Amendment purposes” (999 F2d, at 704 [citation omitted]).
*795 Consequently, under Federal analysis, begging constitutes protected speech under the First Amendment and should be analyzed under the same standards as have been applied to other forms of solicitation. To the extent that Young (supra) held otherwise, it is not in keeping with Supreme Court precedent. This court is bound at a minimum, by application of the First Amendment to the States by virtue of the Fourteenth Amendment, to find at least as great a protection of speech under the New York Constitution as exists under the Federal Constitution. Therefore, I find article I, § 8 of the New York Constitution includes begging as a form of protected speech.
Even if begging were not protected speech under the First Amendment, it would be protected speech under the greater protection of the New York Constitution. It is without question that our State may interpret its own law to supplement or expand upon Federal constitutional rights (People v P. J Video, 68 NY2d 296, 301-302, cert denied 479 US 1091; People ex rel. Arcara v Cloud Books, supra, 68 NY2d, at 557; see also, People v Scott, 79 NY2d 474, 495-496; Immuno AG. v Moor-Jankowski, 77 NY2d 235, 248-249, cert denied 500 US 954; O’Neill v Oakgrove Constr., 71 NY2d 521, 528-529). In determining whether our State Constitution grants greater protection to the individual liberties and rights of its citizens than the Federal Constitution, the Court of Appeals has considered such factors as whether the language of the State constitutional provision is sufficiently unique from its Federal counterpart to support a broader interpretation, as well as whether "the very structure and purpose of the State Constitution serves to expressly affirm certain rights rather than merely restrain the sovereign power of the State.” (People v P. J. Video, supra, 68 NY2d, at 302-303.) The language of article I, § 8 is not only unique from that of the First Amendment but is also an express grant of the right to speak freely. Article I, § 8 reads, in relevant part, "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press.” By comparison, the First Amendment is only a restraint on the government’s power to make no laws "abridging the freedom of speech”. Accordingly, this court has the authority to find a broader free speech protection under the New York Constitution (see, People ex rel. Arcara v Cloud Books, supra, 68 NY2d, at 557-558; see also, Immuno AG. v Moor-Jankowski, supra, 77 *796 NY2d, at 249; O’Neill v Oakgrove Constr., supra, 71 NY2d, at 529, n 3).
The Court of Appeals in People v Bright (71 NY2d 376) demonstrated the evolving attitude toward the poor in our State in its recognition that loitering cannot be totally banned in areas that have developed into "public places”, unless a person is loitering for a specific illegal purpose (supra, at 384). Furthermore, our State long ago recognized the right to solicit door to door in the exercise of our fundamental rights to freedom of worship, speech and of the press, as guaranteed by the Bill of Rights of both our State and Federal Constitutions (People v Barber, 289 NY 378, 385-386). While there appears to be no appellate court precedent in New York addressing the right to solicit charity for one’s own benefit, this court is convinced that existing case law, in conjunction with the clear language of article I, § 8, in its affirmative grant to every citizen of the right to speak freely on all subjects, mandates a finding that the right to beg in public places cannot be unconditionally banned.
I reject the People’s contention that begging is conduct without a particularized message (cf., People v Hollman, 68 NY2d 202, supra). Begging is not only conduct with an expressive element, but is speech itself. The beggar often makes a verbal plea for money (whether citing a need for food, housing, clothing, medical attention, etc.), in addition to the conduct of shaking a cup or holding out a hand. Even without the use of any words or signs, a clear message is conveyed to all who pass by the shaking cup: the beggar’s need for money to meet his or her survival needs. Under the affirmative grant of freedom of speech in our State Constitution, there is no requirement that the beggar’s message convey any particular political or social message (cf., Young v New York City Tr. Auth., supra, 903 F2d, at 153). The idea that our freedom to speak is limited only to words or conduct deemed to be of some greater societal value than the mere needs of the individual is antithetical to our most basic protections of the free exchange of our ideas, thoughts and feelings.[3] Accordingly, I find that begging is protected speech under the New York Constitution.

*797
III. Can Begging be Banned within the Confines of the New York City Transit System?

The next question before the court is whether begging, a form of protected speech, may be banned within the limited boundaries of the transit system. Bans on speech on government property are examined under a three level forum analysis (Perry Educ. Assn. v Perry Local Educators’ Assn., 460 US 37, supra). The forum analysis developed out of the long-recognized principle that governments, whether State or Federal, are not required to permit all forms of speech on all property that they own and control (see, e.g., United States Postal Serv. v Greenburgh Civic Assns., 453 US 114, 129-130; Greer v Spock, 424 US 828, 836; Lehman v City of Shaker Hgts., 418 US 298, 302-303). This axiom was definitively set forth in Cornelius v NAACP Legal Defense & Educ. Fund (473 US 788, supra), where the Court observed: "Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker’s activities.” (Supra, at 799-800.) Thus, whether or not speech is permitted ultimately depends upon the type of government property found to be involved.
The first level of forum analysis involves restrictions on speech on property that has traditionally been made available for public expression. Such property includes the street and parks which " 'have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembling, communicating thoughts between citizens, and discussing public questions’ ” (Perry Educ. Assn. v Perry Local Educators’ Assn., supra, 460 US, at 45 [citation omitted]). In such a forum, a content-based regulation must demonstrate a compelling State interest and must be narrowly drawn to achieve that end. The State may also implement time, place and manner restrictions if they are content-neutral, narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels of communication.
The second category of public property is the designated public forum in which the State has opened up government property for speech by all or part of the public. Such a forum may be created for a limited purpose, for use by only certain speakers or groups (supra, at 46, n 7). For example, in Widmar *798 v Vincent (454 US 263), a State university which had opened up its meeting facilities to registered student groups had to provide equal access to all such groups, including a religious student organization. This did not, however, create an unlimited public forum whereby outside groups or individuals could use the meeting facilities. A content-based regulation for groups or speakers within the designated class is subject to the same compelling interest test as is applied in traditional public fora.
The third category, nonpublic fora, consists of all remaining government property which the State may reserve for its intended purpose (Perry Educ. Assn. v Perry Local Educators’ Assn., supra, 460 US, at 46). Where a limited forum has been created, regulation of the reserved nonpublic uses continue to be analyzed under the nonpublic forum standard (United States v Kokinda, supra, 497 US, at 730). In nonpublic forums, a regulation on speech need only be reasonable, as long as it is not an effort to suppress a speaker’s viewpoint, whether for or against the subject involved.
The New York City transit system is a nonpublic forum, containing at most, a limited forum open only to some speech activities, but expressly not extended to begging (accord, Young v New York City Tr. Auth., supra; Loper v New York City Police Dept., supra). The transit system is engaged in a proprietary function of providing safe and efficient transportation to the vast number of passengers that pass through it every day. No one may enter the transit system without first paying a fare for its services. The system itself consists of stairs, escalators, elevators, and numerous passageways leading to narrow subway platforms. In most stations little comforts are provided, aside from an occasional newsstand. The safe movement and transportation of passengers, a proprietary function, is and always has been the primary purpose of the transit system. Where the government is engaged in such a proprietary function, it may, consistent with carrying out its intended purpose, ban some speech activities while allowing others (Lehman v City of Shaker Hgts., 418 US 298, supra). In Lehman, which likewise dealt with a ban on speech within a city transportation system, the Supreme Court upheld a ban on political advertisements on transit vehicles even though other forms of advertising were allowed. The Court found that the city’s concerns regarding the appearance of political favoritism coupled with problems of parceling out limited advertising space were reasonable considerations justifying the ban. *799 Similarly, the TA’s ban on begging in the subways, while allowing other forms of solicitation, is a reasonable distinction in light of the TA’s concerns with public safety and the avoidance of congestion in providing its transportation services.
In cases where the principal function of property would be disrupted by the expressive activity sought to be engaged in, the Supreme Court has been particularly reluctant to find the government intended to create a public forum (see, Cornelius v NAACP Legal Defense & Educ. Fund, supra, 473 US, at 804). The TA has a valid concern for the protection and safety of the passengers on its conveyances. While the TA has chosen to allow a limited class of organizations, registered charities, to solicit for needy causes, its refusal to allow begging by large numbers of individuals, is a reasonable safety precaution. As the Court stated in Perry (supra): "Implicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity. These distinctions may be impermissible in a public forum but are inherent and inescapable in the process of limiting a nonpublic forum to activities compatible with the intended purpose of the property. The touchstone for evaluating these distinctions is whether they are reasonable in light of the purpose which the forum at issue serves.” (460 US, at 49.)
The distinction made between beggars and organized charities is a reasonable one in light of the nature and function of the transit system. The inherently alarming quality of solicitations by individual beggars approaching passengers in close and confined passageways and on narrow platforms is an intrinsically dangerous situation, both in terms of potential accidents and in terms of increased assaults and thefts. Additionally, registered charities, unlike beggars, may be investigated and overseen, limiting the risk of fraudulent solicitations.
The transit system, as a nonpublic forum, is not required to choose the least restrictive means of regulating begging. A government restriction on access in a nonpublic forum need only "be reasonable; it need not be the most reasonable or the only reasonable limitation.” (Cornelius v NAACP Legal Defense & Educ. Fund, supra, 473 US, at 808.) Accordingly, the TA has set forth sufficient reasons to justify its distinction between registered charitable groups and individual beggars. In addition, the ban on individual begging is not viewpoint based. The message the defendant seeks to put forth, the need *800 to aid the homeless and needy, is a message that is allowed to be expressed by the registered charities. Thus, the regulation does not prohibit activity because of disagreement with the views expressed.
Defendant’s remaining arguments, that New York does not follow forum analysis, and that New York law provides greater protection to begging in the transit system under the test of People ex rel. Arcara v Cloud Books (68 NY2d 553, supra), are without merit.
The defendant cites no case law in support of its statement that our courts do not recognize forum analysis in interpreting our own Constitution. In analyzing free speech issues, our courts have expressed no hostility to the principles of forum analysis (see, e.g., City of New York v American School Publ., 69 NY2d 576, 582; Matter of Madole v Barnes, 20 NY2d 169, 173; Matter of Gold-Greenberger v Human Resources Admin., 154 AD2d 124, 128-134, revd on other grounds 77 NY2d 973). In People v Bright (71 NY2d 376, supra), the Court, while not using the forum terminology, in essence engaged in a forum-type analysis in finding that the Long Island Railroad concourse in Pennsylvania Station and the Port Authority Bus Terminal had over time become so open to the public as to have become public places. The Court noted that in the past: "railroad stations offered few amenities, serving primarily as a place to purchase a ticket and wait for a train. Since that time, several of our transportation facilities have evolved into large, multipurpose complexes, replete with wide concourses along which numerous establishments of all kinds implicitly invite the public to enter, browse and shop.” (Supra, at 386.) The Court in Bright likewise noted the continuing validity of its prior decisions upholding statutes banning loitering in places of limited public access, such as in schools or at waterfront facilities (supra, at 384). Under the rationale of Bright, the subways remain a place of limited public access in which begging can be banned. The transit system continues to be primarily a place to purchase a token and enter to wait for a train. The subways are not large complexes with stores and restaurants where the public is enticed to enter even if they have no transportation needs. Accordingly, the New York case law is fully in accord with the principles of Federal forum analysis and with the Second Circuit’s decisions that the transit system is not a public forum.
Lastly, the defendant is incorrect in his contention that the Court of Appeals decision in Arcara (68 NY2d 553, supra) calls *801 for a stricter standard than Federal analysis. The Arcara case first came before the Court of Appeals (65 NY2d 324) as a challenge to the application of a nuisance statute to defendant’s bookstore. Defendant, whose bookstore sold sexually explicit (but not obscene) materials, argued that the closure of his bookstore because acts of prostitution had been committed on the premises violated his First Amendment rights. The Court applied O’Brien (391 US 367, supra), reasoning that the statute was a regulation on conduct, prostitution, which had the incidental effect of restricting defendant’s right to sell books and movies (supra, at 335-336). The Court found that the statute failed the last part of the O’Brien test, as the incidental restriction on First Amendment freedoms was broader than necessary to achieve the government’s significant interest in prohibiting prostitution. The Supreme Court granted certiorari and reversed, finding that the regulation on prostitution was not a content-based regulation on speech nor was it a regulation on conduct with an expressive element (478 US 697). The fact that the prostitution in this particular situation happened to occur in a bookstore was deemed too remote to implicate the First Amendment. On remand (68 NY2d 553, supra), the Court of Appeals held that under article I, § 8 of the New York Constitution, a greater protection was afforded in this unique situation where a regulation on one type of conduct incidentally effects a protected speech activity, despite the fact that the speech activity is not directly related to the conduct being regulated. However, Arcara only expanded upon the Supreme Court’s analysis of free speech rights to the extent of these unusual circumstances. Arcara did not in any way involve free speech rights on government property.
I can ascertain no relevancy regarding Arcara’s expansion of the O’Brien test to the issue now before the court. As previously stated, the TA’s ban on begging involves a direct restriction on speech in a nonpublic forum, requiring an entirely different analysis than Arcara’s situation involving an incidental restriction on speech on private property. The defendant’s reliance on Arcara (supra) is therefore misplaced. As this case involves a nonpublic forum, the TA’s ban has met the constitutional requirement that it be reasonable and viewpoint neutral. In any event, in a nonpublic forum, the reasonableness test is the applicable standard whether the rule involved is a content-based regulation on speech or an incidental restriction on expressive activity. No greater test *802 can apply for symbolic speech in a nonpublic forum than is applicable under Perry (supra) for direct restrictions on speech in that forum. Thus, as the transit system is a nonpublic forum, the regulation banning begging withstands constitutional scrutiny whether the ban on begging is viewed as content-based or merely as an incidental restriction on expressive activity.[4]
Accordingly, 21 NYCRR 1050.6 (b) does not violate the defendant’s freedom of speech under the New York Constitution. Defendant’s motion to dismiss the accusatory instrument as violative of article I, § 8 of the New York Constitution is denied.[5]
[Portions of opinion omitted for purposes of publication.]

. 21 NYCRR 1050.6 (b) and (c) reads as follows:
"(b) No person, unless duly authorized by the authority, shall engage in any commercial activity upon any facility or conveyance. Commercial activities include:
"(1) the advertising, display, sale, lease, offer for sale or lease, or distribution of food, goods, services or entertainment (including the free distribution of promotional goods or materials); and
"(2) the solicitation of money or payment for food, goods, services or entertainment. No person shall panhandle or beg upon any facility or conveyance.
"(c) Except as expressly authorized and permitted in this subsection, no person shall engage in any nontransit uses upon any facility or conveyance. Nontransit uses are noncommercial activities that are not directly related to the use of a facility or conveyance for transportation. The following non-transit uses are authorized and permitted by the Authority, provided they do not impede transit activities and they are conducted in accordance with the rules governing the conduct and safety of the public in the use of facilities of New York City Transit Authority and Manhattan and Bronx Surface Transit Operating Authority: public speaking; distribution of written non-commercial materials; artistic performances, including the acceptance of donations; solicitation for religious or political causes; solicitation for charities that (1) have been licensed for any public solicitation within the preceding twelve months by the Commissioner of Social Services of the City of New York under § 21-111 of the Administrative Code of the City of New York or any successor provision, or (2) are duly registered as charitable organizations with the Secretary of State of the State of New York under § 172 of the New York Executive Law or any successor provision, or (3) are exempt from federal income tax under § 501 (c) (3) of the United States Internal Revenue Code or any successor provision. Solicitors for such charities shall provide, upon request, evidence that such charity meets one of the preceding qualifications.”

. Prior to October 1989, 21 NYCRR 1050.6 (b) prohibited any person, unless duly authorized by the Authority, from soliciting "upon any facility or conveyance * * * alms, subscription or contribution for any purpose.” In 1989, the TA revised the rule to limit the ban on solicitation to commercial activities and to panhandling or begging, as set forth in footnote 1, supra. It further created the authorized exceptions to nontransit uses as listed in section 1050.6 (c), including allowing solicitation by registered charities.

. Contrary to the rationale of the Second Circuit in Young (supra), the Supreme Court, in its decisions involving commercial speech, has repeatedly stated that the First Amendment protects speech, even when it is purely economically motivated (see, e.g., Virginia Pharmacy Bd. v Virginia Consumer Council, 425 US 748, 762; accord, People v Remeny, 40 NY2d 527).

. Even if this case had involved an Arcara/O’Brien issue, I would find the regulation sufficiently justified under that standard in that: (1) it is within the constitutional power of the State as a proper grant of authority to the TA to make rules necessary to govern the conduct and safety of passengers on its facilities (Public Authorities Law § 1204 [5-a]); (2) it furthers the important governmental interests discussed supra, of protecting the health and safety of it passengers; (3) it is unrelated to the suppression of free expression as the same message is in fact stated by charities, and the regulation of beggars is solely motivated by the negative effects of the conduct aspect of the communication which increases the danger of accidents and crime; and (4) the incidental effect on the beggars’ freedom is no broader than needed as the concerns created by vast numbers of individual beggars can only be properly and nondiscriminatorily enforced by a ban. Individual beggars retain ample alternative channels by which to beg throughout the city’s streets, parks and designated public places.

. This decision has been edited for purposes of publication. Defendant also moved for dismissal on grounds of facial insufficiency. The motion to dismiss for facial insufficiency was granted.