OPINION OF THE COURT
Titone, J.
The issue presented on these two appeals is whether Penal Law § 240.35 (7), which provides that "[a] person is guilty of loitering when he * * * [ljoiters or remains in any transportation facility, or is found sleeping therein, and is unable to give a satisfactory explanation of his presence”, is *379 constitutional. We hold that this statute is unconstitutionally vague under the Due Process Clauses of the Federal and State Constitutions because it fails to give fair notice to the ordinary citizen that the prohibited conduct is illegal, it lacks minimal legislative guidelines, thereby permitting arbitrary enforcement and, finally, it requires that a citizen relinquish his constitutional right against compulsory self-incrimination in order to avoid arrest.
I.

People v Bright

On the evening of March 19, 1985, a New York City policeman observed defendant Bright displaying an open satchel to a passerby on the Long Island Railroad Concourse located in Pennsylvania Station. When Bright noticed that the officer was watching him, he quickly closed the satchel. The policeman approached Bright and the following conversation took place:
"Officer: What are you doing here?
"Defendant: Why are you bothering me.
"Officer: Got a ticket to take the train?
"Defendant: No.
"Officer: Any money to buy a ticket?
"Defendant: No.
"Officer: Are you going to take the train?
"Defendant: No.”
Based solely on this exchange, the officer escorted Bright to the Long Island Railroad police office, where he asked Bright to produce identification. When Bright failed to produce any, the officer informed him that he was under arrest for loitering pursuant to Penal Law § 240.35 (7). Bright was read his Miranda warnings and asked to empty his pockets. As Bright removed a piece of paper from his trouser pocket, two credit cards and four other identification cards fell to the floor, none of which belonged to him. Bright then told the officer that he had found the various cards and planned to sell them.
Defendant Bright was charged by indictment with two counts of criminal possession of stolen property in the second degree (Penal Law § 165.45 [2]), and one count of criminal possession of stolen property in the third degree (Penal Law § 165.40). On his pretrial motion to suppress the physical *380 evidence, Bright argued that he was arrested without probable cause, and that his arrest was illegal, since the loitering statute pursuant to which he was arrested was unconstitutional. The Supreme Court, relying on its decision in People v Velazquez (77 Mise 2d 749), held that the statute was unconstitutionally vague and granted the suppression motion on the theory that the arrest was violative of the defendant’s constitutional rights. A unanimous Appellate Division affirmed, without opinion.

People v Clark

On the morning of April 24, 1985, defendant Clark was in the Port Authority Bus Terminal located in New York City when he was approached by a Port Authority police officer. Although the record is not entirely clear as to what occurred next, the officer arrested Clark for loitering in violation of Penal Law § 240.35 (7) when he was unable to give a satisfactory explanation regarding his presence in the bus terminal. As an incident to that arrest, the officer searched Clark and found a cellophane envelope containing cocaine and a glass pipe with cocaine residue in the defendant’s jacket pocket.
Clark was charged with loitering (Penal Law § 240.35 [7]), and criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03). At his arraignment before the Criminal Court of the City of New York, Clark moved to dismiss the loitering charge on the ground that Penal Law § 240.35 (7) was unconstitutionally vague. His motion was denied, and he was permitted to plead guilty to a violation of the loitering statute in satisfaction of both charges. On appeal before the Appellate Term, First Department, the court held that the statute was unconstitutionally vague and reversed the conviction, dismissed the loitering charge and remanded the case to the Criminal Court for further proceedings on the charge of criminal possession of a controlled substance.
In each of these two cases, a Judge of this court granted the People leave to appeal so that we could consider the constitutionality of Penal Law § 240.35 (7). We have examined the People’s arguments in support of the statute, but agree with the defendants that the statute is void for vagueness, and we now affirm in both cases.[1]
*381 II.
Penal Law § 240.35 (7) is derived from two former enactments, Penal Law § 1990-a (2) (L 1939, ch 391, as amended by L 1941, ch 835, and L 1951, ch 269) and Penal Law § 150 (2) (L 1953, ch 139). Under former Penal Law § 1990-a (2), a person was guilty of an offense if he loitered or was found sleeping "about any toilet, station or station platform of a subway or elevated railway or of a railroad” and was "unable to give satisfactory explanation of his presence”.
The legislative history of Penal Law § 1990-a (2) indicates that the subways and railroad stations had become an attractive place for "fakers, perverts, pickpockets, loiterers, sleepers, flimflam men, etc., [who] infest[ed] these properties, night and day, necessitating constant policing by a large force of special officers and state railway officers” (Bill Jacket, L 1939, ch 391, Senate Mem, at 4). Public officials and railroad authorities sought to prevent "peddlers and loiterers from harassing and annoying people on the railroad properties” (id., Senate Mem, at 3). The Legislature, aware that the courts were refusing to convict people arrested in the train and subway stations of vagrancy or disorderly conduct, considered the bill necessary to protect the traveling public, especially because of the desire to "clean up” the subways and other railroad facilities in anticipation of the World’s Fair held in New York City in 1939 (id., Mayor’s letter, at 10-11; Mem to Governor, at 14; see also, People v Bell, 306 NY 110, 113 [danger to public "arises from the congregation of nondescript characters at such locations”]).
Former Penal Law § 150 (2) made it an offense to loiter "about any toilet, area, station, station platform, waiting room or other appurtenance of an air or bus terminal” unless the loiterer was able "to give satisfactory explanation of his presence”. This statute, like its counterpart, Penal Law § 1990-a (2), sought to provide "maximum passenger safety, comfort and convenience” by ridding these facilities of "many undesirable characters” who were loitering, soliciting business and begging in passenger terminals (Bill Jacket, L 1953, ch 139, Mem in support, at 4-5).
In 1965, the Legislature enacted the statute at issue here, *382 Penal Law § 240.35 (7), restating in more general terms former Penal Laws §§ 150 and 1990-a (2) (see, Hechtman, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 240.35 [7], at 317). Under the statute, one is guilty of a violation if he "[ljoiters or remains in any transportation facility, or is found sleeping therein, and is unable to give a satisfactory explanation of his presence” (Penal Law § 240.35 [7]). A "transportation facility” is defined as "any conveyance, premises or place used for or in connection with public passenger transportation, whether by air, railroad, motor vehicle or any other method. It includes aircraft, watercraft, railroad cars, buses, and air, boat, railroad and bus terminals and stations and all appurtenances thereto” (Penal Law § 240.00 [2])-
III.
An enactment of our Legislature is presumed to be valid and the heavy burden of demonstrating that a statute is unconstitutional rests with the one seeking to invalidate the statute (Matter of Van Berkel v Power, 16 NY2d 37, 40; Fenster v Leary, 20 NY2d 309, 314; People v Pagnotta, 25 NY2d 333, 337). In a challenge to the constitutionality of a penal law on the grounds of vagueness, it is well settled that a two-pronged analysis is required. First, the statute must provide sufficient notice of what conduct is prohibited; second, the statute must not be written in such a manner as to permit or encourage arbitrary and discriminatory enforcement (see, Kolender v Lawson, 461 US 352, 357; Grayned v City of Rockford, 408 US 104, 108-109; Papachristou v City of Jacksonville, 405 US 156, 162; People v Nelson, 69 NY2d 302, 307; People v Smith, 44 NY2d 613, 618; Matter of Sussman v New York State Organized Crime Task Force, 39 NY2d 227, 234; People v Heller, 33 NY2d 314, 328; People v Berck, 32 NY2d 567, 569; People v Pagnotta, supra, at 337).
The rationale underlying the requirement that a penal statute provide adequate notice is the notion "that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed” (United States v Harriss, 347 US 612, 617; see also, Colten v Kentucky, 407 US 104, 110; Lanzetta v New Jersey, 306 US 451, 453). Consistent with our concept of basic fairness, due process requires that a penal statute be sufficiently definite by its terms so as "to give a person of ordinary intelligence fair *383 notice that his contemplated conduct is forbidden by the statute” (United States v Harriss, supra, at 617; see also, Colten v Kentucky, supra, at 110; Jordan v De George, 341 US 223, 230-232; Matter of Sussman v New York State Organized Crime Task Force, supra, at 234; People v Berck, supra, at 569). For this reason, under our State and Federal Constitutions, the Legislature may not criminalize conduct that is inherently innocent merely because such conduct is "sometimes attended by improper motives,” since to do so would not fairly inform the ordinary citizen that an otherwise innocent act is illegal (People v Bunis, 9 NY2d 1, 4; see, People v Pagnotta, 25 NY2d 333, 337, supra; People v Diaz, 4 NY2d 469, 470-471; People v Kuc, 272 NY 72, 75-76; see also, Smith v Goguen, 415 US 566, 574 [" 'men of common intelligence’ should not be forced to guess at the meaning of the criminal law”]; Lanzetta v New Jersey, supra, at 453).
The other prong of the test, which requires that a penal law not permit arbitrary or discriminatory enforcement is, perhaps, the more important aspect of the vagueness doctrine (see, Kolender v Lawson, 461 US 352, 358, supra). The Legislature must include in a penal statute "minimal guidelines to govern law enforcement” (id., quoting Smith v Goguen, 415 US 566, 574, supra). The absence of objective standards to guide those enforcing the laws permits the police to make arrests based upon their own personal, subjective idea of right and wrong. A vague statute "confers on police a virtually unrestrained power to arrest and charge persons with a violation” (Lewis v City of New Orleans, 415 US 130, 135 [Powell, J., concurring]), and "furnishes a convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure’ ” (Papachristou v City of Jacksonville, 405 US 156, 170, supra, quoting Thornhill v Alabama, 310 US 88, 97-98).
The term "loiter” or "loitering” has a commonly accepted meaning that has evolved over the years, and connotes the act of remaining about or hanging around a place without any apparent purpose (see, People v Merolla, 9 NY2d 62, 66, cert denied 365 US 872; People v Johnson, 6 NY2d 549, 552, 554 [Fuld, J., dissenting]; People v Diaz, 4 NY2d 469, 470, supra; People v Bell, 306 NY 110, 113, 116-117, supra; People v Taggart, 66 Misc 2d 344, 346-347). However, a statute that merely prohibits loitering, without more, is unconstitutionally vague. Such a generalized law fails to distinguish between *384 conduct calculated to cause harm and conduct that is essentially innocent, thereby failing to give adequate notice of what conduct is prohibited. Further, such a statute impermissibly places complete discretion in the hands of the police to determine whom they will arrest (People v Berck, 32 NY2d 567, 571, supra; People v Merolla, supra, at 67; People v Diaz, supra, at 471).
We have upheld loitering statutes only when they either prohibited loitering for a specific illegal purpose or loitering in a specific place of restricted public access (see, People v Berck, supra, at 570; see also, People v Smith, 44 NY2d 613, supra; People v Pagnotta, 25 NY2d 333, supra; People v Merolla, supra; People v Johnson, supra). Thus, statutes making it a crime to loiter for the purpose of using illegal drugs or for the purpose of engaging in prostitution have been upheld. Such laws provide the ordinary citizen with adequate notice of the exact conduct prohibited, and require the officer on-the-scene to objectively observe some definable impermissible act in order to find probable cause to arrest, thereby foreclosing the possibility that the law will be arbitrarily enforced (see, People v Smith, supra [loitering for purpose of prostitution]; People v Pagnotta, supra [loitering for purpose of using illegal drugs]). Similarly, we have held constitutional statutes prohibiting loitering in a specifically restricted place, such as a school or waterfront facility, since these locations were not open to the public, were places where illegal activity was notorious, and were normally frequented only by those who are affiliated with the activity being carried on there (see, People v Merolla, supra [waterfront facility]; People v Johnson, supra [loitering in schools]).
The thrust of the People’s argument on this appeal in support of the statute is twofold. First, the People argue that the "satisfactory explanation” provision in the statute is constitutionally permissible. Second, the People take the position that Penal Law § 240.35 (7) falls within the category of statutes prohibiting loitering in specific places of restricted public access. To support these arguments, the People rely on People v Bell (306 NY 110, supra), which upheld against constitutional challenge former Penal Law § 1990-a (2), a statute very similar to the one at issue here. In Bell, we held that a provision permitting the police to arrest a person for loitering unless he provides a "satisfactory explanation of his presence” is not a substantive element of the crime, but merely a procedural device to be followed by law enforcement *385 officials in order to prevent the arrest of those who are innocent of any wrongdoing (id., at 114-116). We further held that a subway station or railroad station was a place of restricted public access (id., at 114). Nevertheless, we find the People’s arguments unpersuasive and in direct opposition to precedents that have emerged since Bell was decided from both this court and the United States Supreme Court.
Regardless of whether one characterizes the "satisfactory explanation” requirement as substantive or procedural, in People v Berck, we concluded that a similar provision in a loitering statute that required a person to "identify himself’ or "give a reasonably credible account of his conduct and purposes” was unconstitutional (People v Berck, 32 NY2d 567, 569, n 1; 571-572, supra). We held that under this provision, "enforcement of the law depends entirely upon whether the arresting officer is satisfied that a suspect has given” an acceptable account of his presence (People v Berck, supra, at 571). Similarly, in Kolender v Lawson (461 US 352, supra), the court invalidated a California loitering statute that required a person to provide identification and to account for his presence when requested by a peace officer. The court concluded that the statute contained "no standard for determining what a suspect has to do in order to satisfy the requirement” (Kolender v Lawson, supra, at 358). Thus, the court held that the statute was unconstitutionally vague because it vested "virtually complete discretion in the hands of the police” without any legislative guidelines (id.). The statutory mandate at issue here that a suspect provide the officer with a "satisfactory explanation of his presence” is indistinguishable from these other "credible account” provisions. The determination as to what constitutes a "satisfactory explanation” is left entirely up to the policeman on the scene without any legislative guidance whatsoever, and renders the statute unconstitutional (see also, People v Schanbarger, 24 NY2d 288).
Requiring a person suspected of violating the loitering statute provide a "satisfactory explanation” to avoid arrest is also violative of a citizen’s right not to answer questions posed by law enforcement officers. Although a police officer may have the right under appropriate circumstances to stop a person in a public place and make inquiry (see, Terry v Ohio, 392 US 1), a citizen is under no obligation to provide any explanation regarding his conduct. He is permitted to remain silent under the Fifth Amendment to the Federal Constitution and article I, section 6 of the State Constitution (People v *386 Schanbarger, supra). However, under Penal Law § 240.35 (7), he is faced with the choice of either foregoing his constitutional right to remain silent in the hope that his explanation will satisfy that particular law enforcement official, or invoking his constitutional right to remain silent and being arrested. As we held in People v Schanbarger (supra, at 292), the failure of a suspect to answer an inquiry of a policeman "cannot constitute a criminal act”. Although "an officer may have a right to inquire into suspicious circumstances, a suspect’s silence may not be used as a predicate for a separate offense such as loitering” (People v Berck, 32 NY2d 567, 574, supra; Kolender v Lawson, supra, at 362-365 [Brennan, J., concurring]). A provision such as this one effectively deprives the citizen of his constitutional right to remain silent, since his failure to speak will result in certain arrest under the statute (cf., Davis v Mississippi, 394 US 721, 727, n 6; Olmstead v United States, 277 US 438, 476-478 [Brandeis, J., dissenting]; People v Conyers, 49 NY2d 174). It punishes a suspect for exercising his constitutional right to remain silent and impermissibly transforms the invocation of this right into a criminal act.
Even if the statute did not contain the "satisfactory explanation” requirement, however, we would still be compelled to conclude that, as applied, the statute is unconstitutionally vague. Under the Penal Law, a "transportation facility” is defined in such a broad, all-encompassing manner so as to include some facilities that are more analogous to the public street than to a specific area of restricted public access that gives notice of its prohibition against loitering. The statutory definition that embraces "all appurtenances thereto” is also too vague and wide ranging in the context of this case. At the time People v Bell (306 NY 110, supra) was decided, railroad stations offered few amenities, serving primarily as a place to purchase a ticket and wait for a train. Since that time, several of our transportation facilities have evolved into large, multipurpose complexes, replete with wide concourses along which numerous retail establishments of all kinds implicitly invite the public to enter, browse and shop.
The two facilities involved here, the Long Island Railroad Station and the Port Authority Bus Terminal, have numerous entrances and exits to the street, the New York City subway lines, as well as to buses, trains and house many other *387 businesses that serve the general public. Thousands of commuters, shoppers and other people enter these terminals for a wide variety of reasons daily (see, Wolin v Port of N. Y. Auth., 392 F2d 83, 85, 88-89; People v Velazquez, 77 Misc 2d 749, supra). As the Second Circuit has stated, the Port Authority Bus Terminal, "with its many adjuncts, becomes something of a small city” (Wolin v Port of N. Y. Auth., supra, at 89). Similarly, Pennsylvania Station is also something of a small, indoor city. These facilities are not places of restricted public access like the school in People v Johnson (supra) or the waterfront facility in People v Merolla (supra), which gave the loiterer notice that he had no right to be there, but, rather, large, public areas.[2]
Since both transportation facilities at issue here are, in reality, "public places,” the statute, as applied, does not satisfy due process, since it fails to give unequivocal notice to the unwary that an activity as innocuous as mere loitering is prohibited (see, People v Berck, 32 NY2d 567, 569, supra). Indeed, facilities such as Pennsylvania Station and Port Authority Bus Terminal are so public in nature, that they actually invite conduct that could be construed as loitering. Thus, in these two cases, the statute has the effect of prohibiting loitering in a public place and cannot withstand constitutional scrutiny (see, People v White, 48 NY2d 849; People v Berck, supra; People v Diaz, 4 NY2d 469, supra).
Moreover, the statute is unconstitutionally vague, since it provides absolutely no legislative "guidelines governing the determination as to whether a person is engaged in suspicious loitering” in places of unrestricted public access (People v Berck, supra, at 571). In such large, urban transportation facilities, many people are engaged in activity that is seemingly aimless to the objective observer, such as waiting for a train, strolling about the concourse, or waiting for the rain to stop. Nevertheless, who will be stopped, questioned, and arrested under this statute is left "solely up to the discretion of the police officer” on the scene (People v Berck, supra, at 571).
Inasmuch as we have concluded that Penal Law § 240.35 (7) *388 is unconstitutional, we need not reach defendant Bright’s claim that the police lacked probable cause to arrest him.
Accordingly, the orders appealed from in both cases should be affirmed.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Hancock, Jr., and Bellacos a concur.
In each case: Order affirmed.

. In affirming, we do not address the issue of whether evidence obtained *381 pursuant to an arrest under an unconstitutional statute necessarily requires that such evidence be suppressed, since the People apparently did not raise the issue below and have not raised this question on appeal (see, Michigan v DeFillippo, 443 US 31).

. Although we upheld the statute in People v Merolla (9 NY2d 62) on the ground that a waterfront facility was a sufficiently restricted area, we did note that the statutory requirement that one not loiter within 500 feet of a waterfront facility might be susceptible to unconstitutional application.