OPINION OF THE COURT
Laura A. Ward, J.
On August 7, 1999, the defendant’s employment at a dental office was terminated. On August 13, 1999, the defendant returned to the office. The defendant sat in a chair and refused to leave the premises after repeatedly being told to leave by the office manager, Marcia Luria. The defendant was arrested and taken to the 17th Precinct. At the precinct, Police Officer Michael Drew attempted to take the defendant to the fingerprint station. The defendant repeatedly pulled away from Officer Drew and finally sat in a chair and refused to get up. As a result of the defendant’s actions, Officer Drew was unable to fingerprint her.
The defendant was charged with criminal trespass in the third degree (Penal Law § 140.10 [a]) and obstruction of governmental administration in the second degree (Penal Law § 195.05). The defendant has moved, among other things, to dismiss both charges on the ground that the accusatory instrument is facially insufficient and to dismiss the charge of obstruction of governmental administration in the second degree on the ground that the statute defining the crime is *766 unconstitutionally vague. For the reasons set forth below, the defendant’s motion to dismiss count two, trespass in the third degree, is granted and the defendant’s motion to dismiss count one, obstruction of governmental administration, is denied.
FACIAL SUFFICIENCY
CPL 100.40 sets forth the standards governing the facial sufficiency of misdemeanor complaints and misdemeanor informa-tions. The factual part of a misdemeanor complaint, along with any supporting depositions which accompany it, must establish reasonable cause to believe that the defendant committed the offenses charged in the accusatory part. The standard for a misdemeanor information is the same as for a complaint except that the information must contain nonhearsay allegations, which if true, establish every element of the offenses charged and the defendant’s commission of those offenses.
CRIMINAL TRESPASS IN THE THIRD DEGREE
A person is guilty of violating Penal Law § 140.10 (a)
“when he knowingly enters or remains unlawfully in a building or upon real property
“(a) which is fenced or otherwise enclosed in a manner designed to exclude intruders.”
According to Penal Law § 140.00 (5),“[a] person ‘enters or remains unlawfully’ in or upon premises when he is not licensed or privileged to do so.” This section also states that “[a] person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person.”
The defendant argues that the accusatory instrument in this case fails to meet the requirements for a facial sufficiency set forth in CPL 100.40 since it fails to set forth that the office was enclosed in a manner to exclude intruders.
In People v MacMahon (NYLJ, July 10, 1995, at 30, col 3 [Grim Ct, NY County]), the court was presented with the identical issue presented here, whether an accusatory instrument charging a violation of Penal Law § 140.10 (a) is sufficient if it fails to state that a building is “fenced or otherwise enclosed in a manner designed to exclude intruders.” The court, in finding that such an accusatory instrument would be sufficient, stated that “the Court rejects the defendants’ argument *767 that the complaint lacks facts establishing that the building was fenced or otherwise enclosed to exclude intruders. It is settled that the phrase ‘fenced or enclosed in a manner designed to exclude intruders’ modifies the phrase ‘real property” and not the word ‘building’. There is no requirement that a building be fenced or enclosed.” In support of this conclusion the court cites People v Brown (25 NY2d 374 [1969]), Matter of Kevin G. (71 Misc 2d 312 [Fam Ct, NY County 1972]), as well as the 1988 Practice Commentary to article 140 of the Penal Law (Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 140, at 12 [1988 ed]). The court’s reliance on these cases, as well as the Practice Commentary, is misplaced.
In People v Brown (supra, at 376) the Court of Appeals, reversing a conviction for trespass in the second degree in violation of Penal Law § 140.10, stated that “[s]ince the defendant concededly entered a ‘building’, the crucial element of the crime required to be established by the people was that he either entered or remained unlawfully.” The Court did not address the question of whether the People needed to prove that the building was “fenced or otherwise enclosed in a manner designed to exclude intruders” because the Court in People v Brown (supra) was dealing with a different statute than the statute presented here and in People v MacMahon (supra).
At the time of the commission of the crime in People v Brown (supra), Penal Law § 140.10 contained no subdivisions. The statute stated that “A person is guilty of criminal trespass in the second degree when he knowingly enters or remains unlawfully in a building or upon real property which is fenced or otherwise enclosed in a manner designed to exclude intruders.”* It is clear that the phrase “which is fenced or otherwise enclosed in a manner designed to exclude intruders” was meant to modify only “real property” and not the word “building.” The phrase, “upon real property which is fenced or otherwise enclosed in a manner designed to exclude intruders,” is set off from the word “building” by the word “or” which immediately follows the word “building.”
The statute which is applicable here and was applicable in People v MacMahon (supra) reads very differently than the statute applicable at the time of People v Brown (supra). Penal Law § 140.10 now contains seven subdivisions which modify ei *768 ther the word “building,” the words “real property” or both. The substance of Penal Law § 140.10, read without any of the subdivisions, states that “A person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in a building or upon real property.” The phrase “which is fenced or otherwise enclosed in a manner designed to exclude intruders” is not attached to the words “upon real property” but is designated as subdivision (a). If the Legislature had intended this phrase to apply only to the words “real property” they either could have written Penal Law § 140.10 as it was written at the time that People v Brown (supra) was decided and added subdivisions thereafter or they could have ended the main portion of the statute following the word “or” and including “upon real property’ as part of subdivision (a). By writing Penal Law § 140.10 as they did, it is clear that the Legislature intended that the phrase “which is fenced or otherwise enclosed in a manner designed to exclude intruders” modify both the words “building” and “upon real property” (cf., People v Warren, 173 Misc 2d 864 [Monroe County Ct 1997]).
Additionally, the 1988 Practice Commentary to article 140 of the Penal Law, cited by People v MacMahon (supra), does not limit the phrase “which is fenced or otherwise enclosed in a manner designed to exclude intruders” to modifying real property. The Practice Commentary to Penal Law § 140.10, that refers to the law in effect at the time of People v Brown (supra) and Matter of Kevin G. (supra), stated that “[t]wo places are protected by this section: (1) a building and (2) any real property which is fenced or otherwise enclosed in a manner designed to exclude intruders” (Denzer and McQuillan, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 140.10, at 351 [1967 ed]). However, the Practice Commentary to article 140 of the Penal Law that referred to the amended staute in effect at the time of People v MacMahon (supra) states that “[c]riminal trespass in the third degree requires that the premises be a building, which includes a dwelling, or real property which is fenced or otherwise enclosed in a manner designed to exclude intruders” (Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 140, at 12 [1988 ed]). While the 1969 Commentary separates the word “building” from the phrase “which is fenced or otherwise enclosed in a manner designed to exclude intruders,” the 1988 Commentary does not separate the word “building” from the modifying phrase.
The statute as it is presently constructed requires the People to allege facts establishing that the building was “fenced *769 or otherwise enclosed in a manner designed to exclude intruders.” The accusatory instrument does not set forth any facts establishing that the office was “fenced or otherwise enclosed in a manner designed to exclude intruders” and therefore fails to establish every element of the crime of trespass in the third degree and the defendant’s commission of that crime, nor does it even establish reasonable cause to believe that the defendant committed the crime of trespass in the third degree. The motion to dismiss the count charging trespass in the third degree is granted.
OBSTRUCTION OF GOVERNMENTAL ADMINISTRATION IN THE SECOND DEGREE
Penal Law § 195.05 provides, in pertinent part, that “[a] person is guilty of obstructing governmental administration when he intentionally * * * prevents or attempts to prevent a public servant from performing an official function, by means of * * * physical force or interference.” The defendant asserts that the accusatory instrument is facially insufficient since it fails to allege the performance of an official function by a public servant and that the acts committed by her do not constitute physical force or interference.
The defendant argues that fingerprinting a newly arrested defendant is not an official function until the issuance of a fingerprint order by the court. In support of this argument, the defendant cites a comment made by the court in People v Batista (128 Misc 2d 1054 [Crim Ct, NY County 1985]).
In Batista (supra), the defendant was arrested for violating several sections of the Vehicle and Traffic Law including Vehicle and Traffic Law § 1192 (2), driving while intoxicated. While the police refused the defendant’s request for a blood test, she consented to a breathalyzer examination. When the defendant refused to be fingerprinted, instead of being issued a desk appearance ticket, she was held for arraignment. As a result of the defendant being held, she was unable to arrange for her own physician to perform a blood test within two hours of her arrest. In ruling upon the defendant’s motion to suppress the breathalyzer examination, the court felt that it was necessary to “determine if the defendant’s refusal to be fingerprinted released the police from their obligation to protect the defendant’s right to an independent blood test” (at 1056). In resolving this issue the court stated that “[c]learly, under CPL 160.10 the police are required to fingerprint the defendant either voluntarily after the arrest or upon court order after ar *770 raignment. {See, CPL 160.10 [1] [c].) In light of the defendant’s refusal to be printed, it was appropriate for the police to hold the defendant pending the receipt of a court order to compel the defendant to submit to fingerprinting.” (Supra, at 1056.) It is these comments upon which the defendant relies for her argument that there was no requirement for the police to fingerprint the defendant prior to her arraignment and that therefore they were not attempting to perform an official function. The defendant’s reliance is misplaced.
CPL 160.10 (1) (c) sets forth the procedures for fingerprinting a defendant. It provides that
“[flollowing an arrest, or following the arraignment upon a local criminal court accusatory instrument of a defendant whose court attendance has been secured by a summons or an appearance ticket under circumstances described in sections 130.60 and 150.70, the arresting or other appropriate police officer or agency must take or cause to be taken fingerprints of the arrested person or defendant if an offense which is the subject of the arrest or which is charged in the accusatory instrument filed is * * *
“A misdemeanor defined outside the penal law which would constitute a felony if such person had a previous judgment of conviction for a crime.”
The phrasing of the statute makes it clear that the requirement of the timing of fingerprinting a defendant differs depending on whether the defendant has been arrested or given a summons or appearance ticket.
Clearly, the Legislature, in drafting this section, intended that fingerprinting occur either after an arrest, or when the defendant appears in court pursuant to the summons or appearance ticket. The portion of the statute providing for fingerprinting “following the arraignment upon a local criminal court accusatory instrument” is limited to “a defendant whose court attendance has been secured by a summons or an appearance ticket under circumstances described in sections 130.60 and 150.70.” (CPL 160.10 [1].) This portion is set off from the phrase “[flollowing an arrest” by a comma and the word “or.”
Additionally, it is logical that the timing of the fingerprinting differs depending on whether the defendant is arrested or given a summons or appearance ticket. An individual who is arrested is in police custody and therefore the police are in a position to fingerprint the person. However, when a person is issued a summons or appearance ticket, they are not in custody *771 and therefore, logistically, there is a need for delaying fingerprinting until arraignment, when the person comes within the jurisdiction of the court.
Finally, in People v Johnson (168 AD2d 700 [3d Dept 1990]), the Court, citing CPL 160.10, stated “that police officers have a statutory obligation to take fingerprints and to submit them to the proper agency.” In view of the fact that the police were required by statute to fingerprint the defendant following her arrest and not delay the fingerprinting until a court order was issued at the defendant’s arraignment, Officer Drew was attempting to perform an official function when he sought to fingerprint the defendant.
The defendant’s claim that the acts committed by her do not constitute physical force or interference is also without merit. At the time that Officer Drew attempted to fingerprint the defendant, she repeatedly pulled away from Officer Drew and finally sat in a chair and refused to get up. By pulling away from Officer Drew and sitting in a chair, the defendant affirmatively resisted the officer’s attempt to fingerprint her and these actions on her part clearly constitute physical force as well as physically interfering with the officer’s attempt to perform an official function (cf, People v Stumpp, 132 Misc 2d 3 [App Term, 2d Dept 1986]; People v Barrett, 179 Misc 2d 261 [Crim Ct, Bronx County 1998]; People v Ravizee, 146 Misc 2d 679 [Crim Ct, NY County 1990]).
In view of the fact that the accusatory instrument establishes, by nonhearsay allegations, every element of the crime of obstruction of governmental administration in the second degree and the defendant’s commission of that crime, the defendant’s motion to dismiss the charge of obstruction of governmental administration in the second degree on the ground that the accusatory instrument is facially insufficient is denied.
VAGUENESS
The defendant also argues that Penal Law § 195.05 is void for vagueness since it fails to provide sufficient notice as to the conduct that is forbidden and engenders arrests and prosecutions that are arbitrary, discriminatory, and erratic. The defendant specifically challenges the part of Penal Law § 195.05 which prohibits a person from intentionally obstructing, impairing, or perverting the administration of law or other governmental function or preventing or attempting “to prevent a public servant from performing an official function, by means *772 of intimidation, physical force or interference, or by means of any independently unlawful act.”
In Grayned v City of Rockford (408 US 104, 108-109), the Supreme Court delineated the standards for determining whether a statute was vague: “Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.” Thus, a legislative enactment must inform the average person fair notice that his or her action is forbidden by law and may not engender arrests, prosecutions, and convictions that are arbitrary and erratic. Legislation that does not meet these standards is unconstitutionally vague (Papachristou v City of Jacksonville, 405 US 156; People v Bright, 71 NY2d 376).
The statute here is clear in delineating the type of activity that is proscribed. What is and what is not the “administration of law or other governmental function” (Penal Law § 195.05) is not beyond the understanding of the average person. Any person in our society, as a result of even an elementary education, appreciates, at least the basics, of the administration of law and governmental functions. It is knowledge which is part of the society at large and is constantly the subject of the news on television and radio as well as articles and columns in virtually every newspaper published in this country. Therefore, the statute is not vague in its preclusion of the intentional obstructing, impairing or perverting of the administration of law and other governmental functions.
The remainder of the section with which the defendant’s motion is directed is likewise clear, and not unconstitutionally vague, in defining the type of activities which are prohibited. The prohibition of preventing or attempting “to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act” (Penal Law § 195.05) is unambiguous and not subject to arbitrary and erratic arrests, prosecutions and convictions. The average person is well aware that *773 performance of official functions by public servants is necessary to maintenance of a well-ordered society. As to what specifically is an official function, it is incumbent upon the members of a civilized society to assume that actions taken by public servants are authorized either by statute or regulation and that abiding by the direction of a public servant that is neither physically, mentally, or sexually abusive is what is required to maintain a lawful society. The remainder of the sentence, which sets forth what constitutes preventing or attempting to prevent the performance of an official function by a public servant, is also clear, unambiguous and not subject to interpretation. It prohibits an individual from intentionally and affirmatively engaging in conduct which is designed to prevent the orderly administration of government.
Penal Law § 195.05 is therefore not unconstitutionally vague and the defendant’s motion for an order declaring the statute void for vagueness is denied.
OTHER MOTIONS
The motion to suppress the observations of Police Officer Michael Drew and any other individual of the defendant’s actions in attempting to prevent Officer Drew from fingerprinting her on the ground that such observations were the fruit of an unlawful arrest is denied. In People v Abruzzi (52 AD2d 499 [2d Dept 1976], affd 42 NY2d 813 [1977]), the Court held that the observations of criminality made by police officers conducting an unlawful search must be suppressed unless otherwise attenuated. Additionally, the Court stated that “It should be noted that our decision today has neither the intention nor the practical effect of insulating defendants from evidence of criminal activity directed toward a trespassing police officer. In all cases cited by the dissent in support of its independent crime theory, the independent crime was directed toward the police officer himself. As to those kinds of crimes, the testimony of the police officer is undoubtedly admissible, for the Fourth Amendment is not a vehicle for license to commit crimes against or through the police, regardless of where such crimes occur” (at 504). In this case the observations the defendant seeks to suppress are acts committed by her against Officer Drew and therefore suppression of these observations would not be warranted.
The motion to suppress physical evidence is denied. The defendant has not set forth what items of physical evidence she seeks to suppress.
*774 A hearing on the motion to preclude the People from cross-examining the defendant as to prior convictions and/or bad acts is reserved for the Trial Judge.
The defendant has moved to preclude statements made by her as well as identification testimony on the ground that the People failed to comply with the notice requirements of CPL 710.30. The court file does not indicate the serving of either statement notice or notice of identification testimony at arraignments or within 15 days as required by CPL 710.30 (2) nor have the People alleged that such notices were served as required. The motion to preclude statements and identification testimony is granted.

 The court in Matter of Kevin G. (supra) was dealing with the same statute.