OPINION OF THE COURT
Analisa Torres, J.
Docket numbers 99C009516 and 99N109498 are combined for disposition.
Introduction
Defendant moves to dismiss the accusatory instruments, on the grounds (1) that Rules Governing the Conduct and Safety of the Public in the Use of the Facilities of New York City Transit Authority (NYCTA rules) (21 NYCRR) § 1050.4 (c) is unconstitutionally vague, and (2) that the accusatory instruments are facially insufficient, and for other relief.
In docket number 99C009516, the violation information states that on November 6, 1999, at the 42nd Street and Seventh Avenue subway station, Police Officer Vargas “observed * * * defendant receive money from four individuals in exchange for which * * * defendant immediately thereafter swipe [d] a MetroCard through the turnstile in order to allow said individuals to enter the subway station beyond the turnstiles without permission or authority to do so.”
In docket number 99N109498, the violation information states that on December 17, 1999, at booth R258 of the 125th Street and Lexington Avenue subway station, Police Officer Emil Feliciano “observed defendant offer for sale to several individuals a fare media card, and an unapprehended individual give defendant one dollar * * * in exchange.”
In each case, defendant is charged with violating NYCTA rules § 1050.4 (c), which states: “Except for employees of the authority acting within the scope of their employment, no person shall sell, provide, copy, reproduce or produce, or create any version of any fare media or otherwise authorize access to or use of the facilities, conveyances or services of the authority without the written permission of a representative of the authority duly authorized by the authority to grant such right *510 to others.” Fare media is defined as “the various instruments issued by or on behalf of the authority to use for the payment of fare,” and includes “tokens, passes, farecards, transfers, tickets, and vouchers.” (21 NYCRR 1050.2 [i].)
Background.
The MetroCard is a magnetically encoded fare pass, which is used to gain entrance to the subway.[1] There are two general types of MetroCard: the “value-based” pass, which is assigned a dollar value, and the “time-based” pass, which may be used for an unlimited number of rides during a specified time period. (Local Rates of Fare and Regulations Governing the Furnishing of Passenger Transportation on Regular Scheduled Service, June 11, 1986, as amended [the Tariff].)
In January 1994, the NYCTA introduced the value-based MetroCard.[2] By sliding the pass through a slot on the turnstile, an automated card-reader deducts the value of one ride from the value stored on the card and permits the cardholder to enter the subway.[3]
Time-based MetroCards were introduced in July 1998.[4] The seven-day pass, for example, allows a passenger to take unlimited rides on the subway within seven days of the initial swipe of the pass.[5]
Constitutional Vagueness
Defendant argues that both accusatory instruments must be dismissed because NYCTA rules § 1050.4 (c) is unconstitutional on the ground of vagueness.
To determine whether a penal law is unconstitutionally vague, a two-pronged analysis is applied. First, the statute must provide adequate notice of what conduct is prohibited; second, the statute must not be drafted in a manner which fosters arbitrary or discriminatory enforcement. (People v Bright, 71 NY2d 376, 382 [1988].)
“The rationale underlying the requirement that a penal statute provide adequate notice is the notion ‘that no man shall be *511 held criminally responsible for conduct which he could not reasonably understand to be proscribed.’ * * * Consistent with our concept of basic fairness, due process requires that a penal statute be sufficiently definite by its terms so as ‘to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute.’ * * * For this reason, under our State and Federal Constitutions, the Legislature may not criminalize conduct that is inherently innocent merely because such conduct is ‘sometimes attended by improper motives,’ since to do so would not fairly inform the ordinary citizen that an otherwise innocent act is illegal * * *
“The other prong of the test, which requires that a penal law not permit arbitrary or discriminatory enforcement is, perhaps, the more important aspect of the vagueness doctrine * * * The absence of objective standards to guide those enforcing the laws permits the police to make arrests based upon their own personal, subjective idea of right and wrong. A vague statute * * * ‘furnishes a convenient tool for “harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure” ’ ” (supra, at 382-383 [citations omitted]).
Under NYCTA rules § 1050.4 (c), only NYCTA employees acting within the scope of their employment or persons who have received the written permission “of a representative of the authority” may “sell” MetroCards or “otherwise authorize access to or use of’ the subway.
The portion of NYCTA rules § 1050.4 (c) which prohibits the unauthorized sale of fare media provides people of ordinary intelligence with adequate notice of the forbidden conduct. In addition, this part of NYCTA rules § 1050.4 (c) offers objective standards to law enforcement personnel.
By contrast, the portion of NYCTA rules § 1050.4 (c) which forbids “authoriz [ing] access to or use of’ the subway is unconstitutionally vague. (People v Mohamadou, Crim Ct, NY County, June 29, 1999, Pfau, J., docket No. 99N022538.) This generalized prohibition does not “distinguish between conduct calculated to cause harm and conduct that is essentially innocent, thereby failing to give adequate notice” of what conduct is verboten. (People v Bright, supra, 71 NY2d, at 383-384.) In addition, this portion of the rule affords law enforcement personnel total discretion in determining whom they will arrest. (Supra.)
The violation information in docket number 99C009516 does not allege that defendant sold a MetroCard, but that he “al *512 Iow[ed]” certain persons who had given him money to enter the subway station by swiping a MetroCard. Because the accusatory instrument relies upon the “authorizing] access” language — the portion of NYCTA rules § 1050.4 (c) which is unconstitutionally vague — it is dismissed.
The accusatory instrument in docket number 99N109498, which alleges that defendant sold a MetroCard, need not be dismissed, because the portion of NYCTA rules § 1050.4 (c) which prohibits sales is not vague. (McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [d].)
Facial Sufficiency
The Tariff states that only “authorized agents” of the NYCTA may accept or solicit compensation for the use of time-based MetroCards. (Tariff § II [N] [3] [b].) The Tariff does not contain a similar restriction for value-based cards.
Defendant suggests that Tariff § II (N) (3) (b) mandates that NYCTA rules § 1050.4 (c)’s prohibition against the sale of MetroCards is applicable to time-based cards only. Defendant argues, therefore, that the violation information in docket number 99N109498 is facially insufficient, because it does not state which type of MetroCard was sold by defendant.
NYCTA rules § 1050.4 (c) makes unlawful the unauthorized sale of all fare media. (But see, People v Lesane, Crim Ct, NY County, Jan. 18, 2000, Feinman, J., docket No. 99N062361.) Defendant has failed to provide any support for the proposition that when the NYCTA adopted Tariff § II (N) (3) (b) in 1998, the NYCTA intended to amend NYCTA rules § 1050.4 (c) by permitting the sale of value-based cards. There is no need to state which type of MetroCard is being sold. The accusatory instrument in docket number 99N109498 is facially sufficient and shall not be dismissed.
Defendant’s motion seeking discovery in docket number 99N109498 is granted to the extent of the information provided in-the People’s response and voluntary disclosure form. Defendant’s motion for a Huntley /Dunaway hearing in docket number 99N109498 is granted.
The Clerk of the Court is directed to seal the file in docket 99C009516. (CPL 160.50 [1], [3] [b].)

. Contract dated July 26, 1991, between the Metropolitan Transportation Authority (MTA), acting by the NYCTA, Cubic Corporation, and Cubic Automatic Revenue Collection Group.

. Resolution of MTA Board of Directors dated Nov. 23, 1993. (The MTA is authorized to revise the NYCTA’s fares for travel [21 NYCRR 1003.3].)

. NYCTA Staff Summary Sheet dated Oct. 12, 1993.

. Resolution of MTA Board of Directors dated June 30, 1998.

. NYCTA Staff Summary dated May 12, 1998..