OPINION OF THE COURT
Robert M. Raciti, J.
The defendant has been charged with (1) menacing in the second degree (Penal Law § 120.14 [1]); (2) reckless endangerment in the second degree (Penal Law § 120.20); (3) possession of a police shield, emblem, uniform or buttons (Administrative Code of City of NY § 14-107); and (4) harassment in the second degree (Penal Law § 240.26 [1]). He moves to dismiss the accusatory instrument as defective (CPL 170.30 [1] [a]; 170.35 [1] [a]).
A legally sufficient misdemeanor complaint must set forth “facts of an evidentiary character” demonstrating “reasonable cause” to believe that the defendant committed the charged offense. (CPL 100.15 [3]; 100.40 [4] [b]; People v Dumas, 68 NY2d 729 [1986].) In order to convert the complaint into a triable information, the People must set forth “non-hearsay allegations [which] establish, if true, every element of the offense charged and the defendant’s commission thereof.” (CPL 100.40 [1] [c].) A legally sufficient information must contain nonhearsay allegations establishing, if true, every element of the offense charged and the defendant’s commission thereof. A complaint or information which fails to satisfy these requirements is j uris diction ally defective. (See, CPL 100.40 [1]; 100.15 [3]; People v Alejandro, 70 NY2d 133 [1987]; People v Dumas, 68 NY2d 729, supra.)
The factual allegations contained in the present accusatory instrument, which is supported by the signed deposition of the complaining witness, read as follows: “Deponent states that at the above mentioned date, time and place of occurrence, he is informed by the complainant, Luis Rodriguez, that the defendant, Khurram Iftikhar, did fire a gun placing the complainant in fear of serious physical injury. Deponent further states that the actions of the defendant did also cause him to become alarmed and annoyed. Deponent further states that he did recover a full size detective shield from the defendant’s right rear pocket. (108 Precinct voucher# AB813758.)”
*568 Defendant has moved to dismiss the accusatory instrument on the ground that it does not set forth adequate facts to support any of the charged offenses. In response to defendant’s motion, the People filed an affirmation in opposition setting forth additional unsworn facts not contained in the accusatory instrument. In pertinent part, the response reads: “Upon information and belief, the source being Luis Rodriguez, on or about March 15, 2000 at approximately 10:25 p.m. at 34th Street and Sillman Avenue, in [Queens County], [Rodriguez] was driving a motor vehicle * * * when [defendant] entered said motor vehicle and demanded to be driven to the Midtown Tunnel. Upon information and belief, the Defendant did represent himself to be a New York City Police Officer and displayed a New York City Police Department Shield to [Rodriguez]. When Mr. Rodriguez refused to drive the Defendant to Manhattan, via the Midtown Tunnel, the Defendant drew a firearm and threatened Mr. Rodriguez’s well being and placed him in fear of serious physical injury. Mr. Rodriguez fled said motor vehicle and while running away from the motor vehicle, heard a shot fired behind him. Mr. Rodriguez called 911, and Police Officer Michael Fitzpatrick arrived at the scene, arrested [defendant], and recovered a New York City Police Department Detective Shield * * * from Defendant’s person.” In reply to the People’s opposition, defendant correctly points out that the new facts contained in the opposition are not part of the accusatory instrument and cannot serve to cure any of its alleged jurisdictional defects. (CPL 100.40 [1], [4]; People v Alejandro, 70 NY2d, supra, at 137; People v Pagan, NYLJ, Aug. 21, 2000, at 29, col 6 [Crim Ct, NY County].)
In count one, charging defendant with menacing in the second degree, the sole factual allegation is that defendant “fire[d] a gun.” There are no allegations in the accusatory instrument that the defendant pointed the gun at the complainant, or used it in any way so as to intentionally put him in reasonable fear of “physical injury, serious physical injury or death,” or that defendant “display[ed]” anything to Rodriguez, much less something that “appears to be” some kind of firearm. (Penal Law § 120.14 [1].) In fact, the accusatory instrument does not even allege the physical proximity of defendant to the complaining witness at any time during the incident. As far as the court can tell, defendant might have been a block away at the time. Again, the People may not utilize the unsworn facts contained in their opposition papers to plug these jurisdiction-ally critical gaps (CPL 100.40 [4] [b]; 100.45 [3]).
*569 Count two of the accusatory instrument, charging second degree reckless endangerment, also is facially insufficient. The People have offered no facts suggesting that the gun at issue was real or that it was capable of discharging live ammunition. There are no facts or circumstances from which this court can conclude that this was a real gun, as opposed to a pellet gun, starter’s pistol or a theatrical imitation gun capable of firing only blanks. (See, People v Madehere, 149 Misc 2d 564 [Crim Ct, Kings County 1991].) Nor, as noted above, is there any factual hint as to relative proximity of the parties, or the direction the gun was supposedly fired. Moreover, although the People’s factual presentation in their opposition papers cannot be used to supplement the accusatory instrument, it does reveal that Rodriguez only “heard” a shot and did not even see a gun being fired, since he was running in the opposite direction. Thus, there are no facts that could be alleged to support the charge that defendant’s conduct “create [d] a substantial risk of serious physical injury to another person.” (Penal Law § 120.20.)
For similar reasons, count four, charging second degree harassment, is also deficient. There are no factual allegations contained in the accusatory instrument showing whether or how the defendant’s act of “fir[ing] a gun” was observed by Rodriguez, the physical positions or proximity of the parties, or any other circumstances demonstrating reasonable cause to believe that the claimed act reasonably could have served to harass, annoy or alarm Rodriguez, or threaten him with physical harm. Again, if those facts exist, as the People now suggest in their opposition, they ought to have been incorporated into the accusatory instrument.
Initially, with respect to count three, the court notes that the People have mistakenly charged the defendant under “AC § 14-187,” which they entitle “Possession of a Police Shield, Emblem, Uniform or Buttons.” The correct section of the Administrative Code would appear to be section 14-107, which is defined as follows:
“§ 14-107 Unlawful use of police uniform or emblem.
“It shall be unlawful for any person not a member of the police force to represent himself or herself falsely as being such a member with a fraudulent design upon persons or property, or to have, use, wear or display without specific authority from the commissioner any uniform, shield, buttons, wreaths, numbers or other insignia or emblem in any way resembling that worn by members of the police force.”
*570 Administrative Code § 14-107 thus appears to criminalize two distinct forms of conduct. The first portion prohibits misrepresenting oneself as a member of the “police force,” when one does so with “fraudulent design.” Since there is no allegation in the accusatory instrument that defendant in any way made representations, by word or conduct] with regard to being a member of the police force, and since the only allegation in the accusatory instrument is that defendant possessed the shield in his pocket, the People must be proceeding under the second portion of the statute, which makes it a crime to “have, use, wear or display,” among other items, a “shield” that “in any way resembl[es]” an official police department shield.
Defendant attacks the People’s application to him of this section of the Administrative Code, which has not been construed in any published court opinion, on the ground that it is “facially unconstitutional, vague and overbroad” under the “First and Fourteenth Amendments to the United States Constitution and Article I, §§ 8, 11 of the Constitution of the State of New York.” The focus of defendant’s complaint is that the portion of the statute upon which the People are proceeding, which makes it a crime to “have, use, wear or display without specific authority from the commissioner any uniform, shield, buttons, wreaths, numbers or other insignia or emblem in any way resembling that worn by members of the police force” (emphasis added), is constitutionally void for vagueness.
In People v Bright (71 NY2d 376, 382 [1988]), the Court of Appeals summarized the standard for review applicable to criminal laws that are purportedly unconstitutionally vague: “An enactment of our Legislature is presumed to be valid and the heavy burden of demonstrating that a statute is unconstitutional rests with the one seeking to invalidate the statute (Matter of Van Berkel v Power, 16 NY2d 37, 40; Fenster v Leary, 20 NY2d 309, 314; People v Pagnotta, 25 NY2d 333, 337). In a challenge to the constitutionality of a penal law on the grounds of vagueness, it is well settled that a two-pronged analysis is required. First, the statute must provide sufficient notice of what conduct is prohibited; second, the statute must not be written in such a manner as to permit or encourage arbitrary and discriminatory enforcement (see, Kolender v Lawson, 461 US 352, 357; Grayned v City of Rockford, 408 US 104, 108-109; Papachristou v City of Jacksonville, 405 US 156, 162; People v Nelson, 69 NY2d 302, 307; People v Smith, 44 NY2d 613, 618; Matter of Sussman v New York State Organized Crime Task Force, 39 NY2d 227, 234; People v Heller, 33 NY2d 314, 328; *571 People v Berck, 32 NY2d 567, 569; People v Pagnotta, supra, at 337).”
The second portion of Administrative Code § 14-107, at issue here, does not satisfy either prong of the vagueness test. First, because it criminalizes mere possession of “any uniform, shield, buttons, wreaths, numbers or other insignia or emblem in any way resembling that worn by members of the police force,” without any specific scienter element, it requires that citizens know that merely “hav[ing]” anything “resembling” such items is unlawful. Notably, it is possession of any one of these items, even in isolation, that is prohibited; the statute does not require that a violator “have” some combination of them.
Common experience, however, demonstrates that the vague wording of the ordinance may make these distinctions exceptionally difficult, even for the innocent-minded. For example, the fashion industry periodically produces long navy blue coats with brass buttons that are meant to “resemble” a police uniform. “Buttons” resembling those worn by police officers are available at Army/Navy stores. “Insignia and emblems,” vague terms in themselves, are available in any number of stores and some of those certainly resemble in one way or another the insignia and emblems adopted by the New York Police Department. And, as to the category of police shields, at issue here, their commercial infiltration into our culture ranges from children’s toy sheriff and detective badges, once advertised on breakfast cereal boxes, to police-like badges and insignia worn by many kinds of private security employees. Simply put, this statute provides the average citizen “of ordinary intelligence” no guidance whatsoever, and therefore supplies no fair notice, as to what form of possessory conduct is permitted and which is prohibited. (See, People v Smith, 44 NY2d 613, 618 [1978], supra.)
The section also fails the second prong of the constitutional vagueness test because it leaves a police officer free to exercise his unfettered discretion in determining whether a shield possessed by a defendant is sufficiently akin to an official police badge as to warrant arrest. Indeed, by deliberately using maximally broad language — “in any way resembl[es]” — the Administrative Code section eschews “objective, ascertainable standards” and permits each individual officer to “apply the statute based upon [his or her] own personal ideas of right and wrong.” (People v Foley, 94 NY2d 668, 682 [2000], citing People v Bright, 71 NY2d, supra, at 383; People v New York Trap Rock Corp., 57 NY2d 371, 376 [1982].) As the Court of Appeals *572 said in Bright (at 383): “The other prong of the test, which requires that a penal law not permit arbitrary or discriminatory enforcement is, perhaps, the more important aspect of the vagueness doctrine (see, Kolender v Lawson, 461 US 352, 358, supra). The Legislature must include in a penal statute ‘minimal guidelines to govern law enforcement’ (id., quoting Smith v Goguen, 415 US 566, 574, supra). The absence of objective standards to guide those enforcing the laws permits the police to make arrests based upon their own personal, subjective idea of right and wrong. A vague statute ‘confers on police a virtually unrestrained power to arrest and charge persons with a violation’ (Lewis v City of New Orleans, 415 US 130, 135 [Powell, J., concurring]), and ‘furnishes a convenient tool for “harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure” ’ (Papachristou v City of Jacksonville, 405 US 156, 170, supra, quoting Thornhill v Alabama, 310 US 88, 97-98).”
The court is aware that in this case the accusatory instrument describes defendant’s shield as a “full size detective shield,” and that this description is substantially more detailed than the broad language of the statute. However, even assuming the literal accuracy of that description, this is not a situation in which this defendant’s conduct was so “plainly within the ambit of the statute,” such that the court is “strain [ing] to imagine marginal situations in which the application of the statute is not so clear.” (People v Nelson, 69 NY2d 302, 308 [1987], supra.) The portion of the ordinance upon which the People are proceeding punishes possession per se, and, indeed, here there are no allegations in the accusatory instrument that defendant did anything with the shield other than carry it in his pocket. The People may not prosecute defendant for violating this portion of the Administrative Code on the simple allegation that he had the shield in his pocket. To do so would permit a police officer to determine, without legislative guidance, that this “full size detective shield,” whether it was a near duplicate of a real detective’s shield or a child’s plastic toy, was criminal because it was covered by the “in any way resemblfes]” umbrella of the statute. The constitutional guidelines set down by the New York Court of Appeals do not permit the law to be applied in that manner. Consequently, this section of the Administrative Code is unconstitutionally vague and this count of the accusatory instrument must be dismissed.
Finally, the People may not save this count by relying upon the assertions in their opposition papers that defendant actu *573 ally displayed the shield to Rodriguez and misrepresented himself as a police officer. Again, if the People had intended to proceed under the first section of section 14-107, they were required to allege some facts from which the court could have reasonable cause to believe that defendant “falsely represented himself’ with “fraudulent design.” No such facts exist in the accusatory instrument. Therefore, for all of the foregoing reasons, the accusatory instrument before the court is dismissed.