OPINION OF THE COURT
Jeffrey M. Atlas, J.
The defendant has been indicted for assault in the third *342 degree as a hate crime. In a pretrial motion, the defendant seeks dismissal of the indictment by challenging the constitutionality of the recently enacted Hate Crimes Act of 2000 (Penal Law §§ 485.00-485.10). Sections 485.05 and 485.10 of the Penal Law, as they apply in this case, enhance the penalties for assault in the third degree by elevating that crime from a misdemeanor to a felony when it has been proved that the offender committed the crime of assault in the third degree and intentionally selected the victim because of a belief or perception regarding the sexual orientation of the victim.[1] The defendant claims that this new statute is unconstitutionally vague. In particular, the defendant claims that the statute provides insufficient notice of prohibited conduct and permits arbitrary and discriminatory enforcement. For the following reasons, the motion is denied.
Early in the morning of October 22, 2000 the complainant was returning to his East Village apartment after having spent the preceding hours with his friends at a neighborhood bar frequented by gay men. According to the complainant, as he crossed the street not far from the bar, he was confronted by the defendant, a complete stranger to him, who attacked the complainant without warning. The complainant contends that he was injured when the defendant punched him in the face, knocked him to the ground, and struck him a number of times. The complainant also states that during the entire incident he heard the defendant repeatedly curse at him, call him a “fag-got,” a “degenerate,” and ask him “how could you walk around like that?” The complainant ultimately stopped the attack and shouted for help. The defendant walked away, but was stopped not far off and identified by the complainant. The defendant was arrested for assault. According to the police, after his arrest, the defendant attributed his behavior to his anger over hearing assertions made during a radio talk show about gay men molesting children. The defendant is alleged to have told the police that he had decided to take out his anger on the complainant whom he perceived as a gay man.
The Grand Jury, having heard the testimony of the complainant and the police, indicted the defendant for the crime of as *343 sault in the third degree as a felony pursuant to section 120.00 (1) of the Penal Law and the hate crime provisions (Penal Law § 485.05 [1] [a]; § 485.10 [2]).
It is of course the burden of the defendant to establish the unconstitutionality of the sections in question. “An enactment of our Legislature is presumed to be valid and the heavy burden of demonstrating that a statute is unconstitutional rests with the one seeking to invalidate the statute.” (People v Bright, 71 NY2d 376, 382 [1988] [citations omitted].) Moreover, “[i]n a challenge to the constitutionality of a penal law on the grounds of vagueness, it is well settled that a two-pronged analysis is required. First, the statute must provide sufficient notice of what conduct is prohibited; second, the statute must not be written in such a manner as to permit or encourage arbitrary and discriminatory enforcement.” (Id.) Finally, in general, a vagueness challenge must be evaluated in light of the facts before the court and the court will not strain to imagine hypothetical or marginal situations in which the application of the statute is not so clear (People v Nelson, 69 NY2d 302, 308 [1987]).
With respect to the first issue to be resolved, our courts have often said that the requirement that a penal statute provide adequate notice of the conduct it prohibits is to make certain that “citizens who desire to obey the statute will have no difficulty understanding it” and that no person be punished for conduct that could not have been reasonably understood as prohibited (Colten v Kentucky, 407 US 104, 110 [1972], quoting Colten v Commonwealth, 467 SW2d 374, 378 [1971]). Thus, “due process requires that a penal statute be sufficiently definite by its terms so as ‘to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute.’ ” (People v Bright, supra at 382-383, quoting United States v Harriss, 347 US 612, 617 [1954].)
In this case no attack is made, nor can one reasonably be made, challenging the assault statute on any constitutional ground. The challenge here is addressed to the enhancement law known as the Hate Crimes Act. In my view the language of that Act is clear and can be reasonably understood by all citizens to prohibit certain kinds of attacks made against others who have been selected by the offender because of a perception as to the victim’s special vulnerability, appearance, or background. As the Legislature noted in findings stated in section 485.00 of the Penal Law, in view of the increased prevalence in our state of criminal acts involving violence, intimida *344 tion, and destruction of property based on bias and prejudice, it was deemed necessary to strengthen our laws “to provide clear recognition of the gravity of hate crimes and the compelling importance of preventing their recurrence.” (Penal Law § 485.00.) Implicit in the findings, of course, is the acknowledgment of our shared pain from past crimes committed against masses of peoples, groups, and individuals which unquestionably were meant to target certain classes of people. Recognizing the frequency of the commission of such acts and its rise of late, the Legislature, in this law, takes an unequivocal and long-awaited stand against such behavior.
Given the history of such offenses and given what is now our universal understanding that such despicable behavior takes place almost daily in our society, it is impossible to imagine that any person in our community would not understand the plain meaning of this law and the ultimate penalties now consequent to putting hateful words and thought into action. The law clearly delineates specific conduct easily avoided by the innocent-minded. (See, People v Nelson, supra at 307.)
Moreover, the notions embodied in the statute have long been used in the sentencing process to enhance penalties for criminal behavior. In this and other jurisdictions, judges have properly enhanced sentences within statutory limits when it was demonstrated that offenders had deliberately selected their victims out of bias, prejudice, or appearance of special vulnerability. Such a practice has always been considered a proper one (Apprendi v New Jersey, 530 US 466 [2000]; Wisconsin v Mitchell, 508 US 476 [1993]). This law simply provides that such enhancement may take place in every case where such victim selection has occurred by permitting the prosecution to submit such behavior to the trier of fact as an additional element of the underlying offense.[2]
The defendant’s claim is that this law penalizes improper motives, which, the defendant argues, may not be constitutionally done. In this argument the defense relies upon certain language in People v Bright (supra) which, in my view, the defense misinterprets. Bright, of course, tells us that “under *345 our State and Federal Constitutions, the Legislature may not criminalize conduct that is inherently innocent merely because such conduct is ‘sometimes attended by improper motives,’ since to do so would not fairly inform the ordinary citizen that an otherwise innocent act is illegal.” (People v Bright, supra at 383, quoting People v Bunis, 9 NY2d 1, 4 [1961].) I note that the language of the statute makes no reference to the motive of the offender. Rather, it speaks of the offender’s intent in selecting the victim. In this context, whether intent and motive can be distinguished is unimportant. As it has been said, in that regard “Mabels do not afford an acceptable answer” (Apprendi v New Jersey, supra at 494, quoting State v Apprendi, 159 NJ 7, 20, 731 A2d 485, 492 [1999]). What is important is the understanding that this legislation increases the punishment not for thought alone, but for behavior impelled by such thought. Consideration of motive in that context has been held to be appropriate. Moreover, to the extent that the defense is concerned that this legislation impermissibly regulates motive, that is thought and speech, laws very much like this one have been upheld as not violating the constitution because such statutes do not prohibit discriminatory beliefs, rather they prohibit discriminatory acts (Wisconsin v Mitchell, supra).
As for the second issue, I also find that the language of the statute does not lend itself to arbitrary and discriminatory enforcement. To begin with, enforcement of these sections by the police is not likely to be expected. In fact, the provisions of these sections apply only when the defendant has already committed one of the underlying crimes specified in the section. Nothing in the statute changes the well-established requirement that the police must have probable cause before arresting an offender for the commission of the underlying specified crime. It is really irrelevant to the making of an arrest that the specified crime will in the fixture be elevated as a hate crime, even though that notion may affect the way the police investigate the crime. Beyond that, enforcement by the prosecutor, the Grand Jury and the trial court really turns on the sufficiency and clarity of proof establishing that the accused purposefully chose the victim, in whole or part, because of the accused’s perception that the selected victim was, as in this case, of a certain sexual orientation. The sufficiency of such evidence is, of course, subject first to objective review by the prosecutor and, in the case of felonies, to scrutiny by the Grand Jury and review by the court. The language of the statute, as I have pointed out, is such as to permit a fully objective assess *346 ment of the evidence before initiating any prosecution. Thus, the law provides objective criteria which must be observed throughout the accusatory process and in no way provides for enforcement according to the subjective conclusions of the complainant, police or prosecutor (see, People v Shack, 86 NY2d 529 [1995]).
Whatever are the concerns about the future of this legislation as it is prosecuted in this state,[3] it seems certain that this statute, as it is applied in these and many other circumstances, is not unconstitutionally vague (see, State v Mortimer, 135 NJ 517, 641 A2d 257 [1994]; Wisconsin v Mitchell, supra).

. The same sections of the Penal Law also enhance the penalties for many other specified offenses where the offender intentionally selected the victim, or intentionally committed the underlying offense, in whole or substantial part, because of a belief or perception regarding the chosen victim’s race, color, national origin, ancestry, gender, religion, religious practice, age, disability or sexual orientation, regardless of whether the belief or perception is correct (Penal Law § 485.05 [1] [a], [b]; § 485.10).

. Hate crime legislation which permitted judges to enhance punishment beyond the statutory maximum sentence without the benefit of the trier of fact having found beyond a reasonable doubt that the prohibited victim selection had taken place was declared unconstitutional in Apprendi v New Jersey (530 US 466 [2000]). The New York statute avoids that pitfall by providing that the critical enhancing issues be charged as an element of the offense and proved beyond a reasonable doubt to the satisfaction of the trier of fact before serving to increase the penalties beyond the usual maximum.

. See the review of such concerns, real and imagined, by Glenn Pincus, Courts and Prosecutors Face New Hate Crime Act (NYLJ, Sept. 21, 2000, at 1, col 1).